[No. B183285. Second Dist., Div. One. Aug. 31, 2005.]

ANTHONY J., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY
SERVICES, Real Party in Interest.

## COUNSEL

Anthony J., in pro. per.; and Linda Peck for Petitioner.

No appearance for Respondent.

Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel, and Arezoo Pichvai, Deputy County Counsel, for Real Party in Interest.

## OPINION

**MALLANO, Acting P. J.**—Anthony J. (Father), the father of T.L. (born in Mar. 2005), challenges a May 17, 2005 order denying him reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(6), based on his abuse of T.L.'s half siblings, N.L. and R.L.[1] Father maintains that section

---

[1] Further statutory references are to the Welfare and Institutions Code. Section 361.5 provides in pertinent part: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (6) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child or a sibling, as defined in this paragraph, by a parent or guardian and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian. [¶] . . . [¶] A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a child's body or the body of a sibling of the child by an act or omission of the parent or guardian, or of another individual or animal with the consent of the parent or guardian; . . . or any other torturous act or omission that would be reasonably understood to cause severe emotional damage. [¶] As used in this paragraph, 'sibling' also includes a person whose legal, biological, or foster parent is the parent of the child."

We will refer to N.L. and R.L. as T.L.'s siblings, as the term "sibling" includes "a person [N.L. and R.L.] whose . . . biological . . . parent [the children's mother] is the parent of the child [T.L.]."

361.5, subdivision (b)(6) does not apply to him because he is neither the parent nor the guardian of the siblings. We conclude that the term "parent" in section 361.5, subdivision (b)(6) refers to Father's status with respect to his son T.L., and not to Father's status with respect to T.L.'s siblings, who are not Father's children. Because the juvenile court properly applied the statute to Father, we deny his petition.[1]

## BACKGROUND

Father and T.L.'s mother (Mother) were living together in September 2004 when both were incarcerated on criminal charges of child cruelty involving Mother's two older children, N.L. (born in Nov. 1995) and R.L. (born in Feb. 2000). Our record does not identify the father of N.L. or of R.L. In July 2004, the Los Angeles County Department of Children and Family Services (DCFS) detained N.L. and R.L. from Mother and placed them in foster care after N.L. told a social worker that she had been sexually abused on an ongoing basis by the maternal grandmother, who was babysitting the children while Mother worked. N.L. was diagnosed with genital warts and said that the maternal grandmother would invite male friends to have sex with N.L. In July 2004, Mother told the social worker that the maternal grandmother had similarly sexually exploited her when she was a child. Both Mother and N.L. told the social worker that N.L. had oral sex with her younger brother, R.L. Both children were extremely emotionally fragile, with N.L. expressing suicidal thoughts and R.L. suffering from nightmares and posttraumatic stress disorder.

In August 2004, Mother denied that N.L. was sexually abused and told an investigator that N.L. might have gotten genital warts at the hospital. In October 2004, Mother denied sexual abuse by the maternal grandmother and told the social worker that she and N.L. did not tell the truth about the maternal grandmother because her boyfriend, Father, had abused and intimidated them and threatened to beat Mother if she did not make the statements about the maternal grandmother.

In October and November 2004, the juvenile court sustained a petition with respect to N.L. and R.L., ordered that Mother was not to receive reunification services, and referred the children for permanent placement services, setting a

section 366.26 hearing for March 2005. N.L. and R.L. were declared dependents under section 300, subdivisions (b) (failure to protect), (c) (serious emotional harm), (d) (sexual abuse), (i) (cruelty), and (j) (abuse of sibling) based on findings that Mother neglected them and failed to protect N.L. from sexual exploitation by the maternal grandmother and from physical abuse by Father. (Although criminal charges were brought against the maternal grandmother, her criminal case was dismissed.) The sustained petition alleged that Father struck, bruised, and scarred N.L.'s body with an extension cord, pulled some of N.L.'s hair from her head, struck her in the face causing black eyes, stomped on and broke her shoulder, and forced her to drink R.L.'s urine.

In early March 2005, Mother gave birth to T.L. in jail. T.L. was detained at birth and placed in a home with a foster family willing to adopt him. Mother was released from jail on March 7, 2005, but her criminal case remained pending. Father remained incarcerated throughout these proceedings. In April 2005, Father filed a statement regarding paternity and the juvenile court rendered a paternity finding and judgment.

On May 10, 2005, the juvenile court sustained a petition finding that T.L. was a dependent under section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (j) (abuse of sibling) based on the same underlying allegations of abuse which had been sustained as to T.L.'s siblings, and on the allegations that T.L.'s siblings were dependents of the juvenile court and that Mother failed to reunify with the siblings. According to DCFS's jurisdictional and dispositional report, Father acknowledged to a social worker that he had physically abused N.L. and R.L., admitting that he hit them with a VCR cord, belt, and his hand, and that he slapped N.L., resulting in a black eye. Father denied knowing about the sexual abuse, but admitted that he observed N.L. orally copulate R.L. on numerous occasions. He also denied making N.L. drink R.L.'s urine but did admit that he threatened it after witnessing N.L. orally copulate R.L. According to the report, Father "told [N.L.] not to do it because [R.L.] had not taken a bath all day, not because it was an inappropriate thing to do."

At a contested dispositional hearing on May 17, 2005, Mother's therapist testified that Mother told her that Mother believed that Mother's boyfriend molested her daughter and that he hit the two older children. Mother testified that she was lying when she told the social worker that the maternal grandmother molested her when she was a child. Mother said that she made the statements about the maternal grandmother and caused N.L. to make

statements about the maternal grandmother because Father was beating her, threatening her, and threatening to kill her children.

The juvenile court found pursuant to section 361.5, subdivision (a) that Father was a "declared father,"[2] that no evidence was presented to show that reunification would benefit the child,[3] and that subdivision (b)(6) of section 361.5 applied to Father (see fn. 1, *ante*) because there was "egregious" abuse of T.L.'s siblings, which abuse was "worse than severe" and resulted in severe physical and emotional scarring. The juvenile court further found that Father had not taken responsibility for the egregious nature of the abuse perpetrated on the siblings, and that it was likely that Father would be incarcerated for a substantial period of time and T.L. could not be safely returned to his care within 12 months. The juvenile court also denied services to Mother under subdivision (b)(7) of section 361.5 based on her "not receiving reunification services for a sibling of the child pursuant to paragraph (3), (5), or (6)." (§361.5, subd. (b)(7).) The court scheduled a section 366.26 hearing for September 19, 2005.

Father's attorney and Father, in propria persona, filed petitions for an extraordinary writ.[4]

---

[2] Section 361.5, subdivision (a) provides in pertinent part: "Except as provided in subdivision (b) . . . whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians. Upon a finding and declaration of paternity by the juvenile court or proof of a prior declaration of paternity by any court of competent jurisdiction, the juvenile court may order services for the child and the biological father, if the court determines that the services will benefit the child. . . ."

Here, the juvenile court made findings which would support denial of services whether Father was a statutorily presumed father or only a biological father. We do not resolve the issue of whether Father qualifies as a statutorily presumed father (see, e.g., *In re Liam L.* (2000) 84 Cal.App.4th 739, 747 [101 Cal.Rptr.2d 13] [affirmed order determining man was presumed father based on voluntary declaration of paternity signed by man and child's mother]) but assume Father is a presumed father for purposes of analysis of section 361.5, subdivision (b)(6).

[3] This finding supports denial of services to Father as a biological father under the provisions of section 361.5, subdivision (a).

[4] In a June 22, 2005 letter attached to his propria persona petition, Father appeared to be unaware that his attorney had filed a petition on his behalf on June 16, 2005. Father's propria persona petition requested the return or grant of custody of the child to him, and a temporary stay pending the grant or denial of the petition for an extraordinary writ. His reason for the request for a stay was stated as "process of the appeal. (I'm not guilty)." As Father's propria persona petition is not supported with any argument or authority, we deny it on that basis and proceed to discuss the merits of the petition filed by his attorney.

## DISCUSSION

Father does not challenge the sufficiency of the evidence supporting the juvenile court's underlying factual findings. Indeed, the petition states that "[i]t was conceded that the father had used corporal punishment on the half-sibling of the baby. He admitted to using cords to hit her. He regretted his actions and promptly came forward." Rather, Father raises an issue of statutory construction, contending that as a matter of law, section 361.5, subdivision (b)(6) should not have been applied to him because he was not the abused sibling's "parent or guardian" within the meaning of the first paragraph of the statute. (See fn. 1, *ante*.) Father reads the phrase "by a parent or guardian" in the first paragraph of the statute to modify only the nouns "child or a sibling" rather than the preceding phrase which includes "the infliction of severe physical harm."

■ A similar issue is presented in the third paragraph of subdivision (b)(6) of section 361.5, which sets out a nonexclusive list of bases for a finding of the infliction of severe physical harm. (See fn. 1, *ante*.) That paragraph states in pertinent part that such a finding may be based on "deliberate and serious injury inflicted to or on a child's body or the body of a sibling of the child by an act or omission of the parent or guardian." (§ 361.5, subd. (b)(6), 3d par.) We intend our discussion of the first paragraph to apply also to the third paragraph.

Here, the abuse was inflicted on T.L.'s sibling. Father reads the statute to require that the abuse be inflicted by the *sibling's* parent or guardian, and he claims he is neither.

■ In construing statutes, a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876] (*Renee J.*).) When the language is clear and there is no uncertainty as to the legislative intent, we look no further and enforce the statute according to its terms; but we must consider the statutory language in the context of the entire statute and the statutory scheme of which it is a part. (*Ibid.*)

■ We must also give the statute a reasonable and commonsense inter-pretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or absurdity. (*Renee J., supra,* 26 Cal.4th at p. 744.) " 'A longstanding rule of statutory construc-tion—the "last antecedent rule"—provides that "qualifying words, phrases

and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote." ' [Citation.] Exceptions to this rule, however, have been identified. One provides that when several words are followed by a clause that applies as much to the first and other words as to the last, ' " 'the natural construction of the language demands that the clause be read as applicable to all.' " ' [Citation.] Another provides that when the sense of the entire act requires that a qualifying word or phrase apply to several preceding words, its application will not be restricted to the last." (*Id.* at p. 743.)

■ Applying the foregoing principles, we conclude that the purpose of the statute can reasonably be achieved only if the phrase "by a parent or guardian" modifies the phrase "the infliction of severe physical harm." Accordingly, the parental relationship in the statute refers to the relationship between the parent inflicting the harm (that is, Father) and the child whose reunification services are at issue in the current proceeding (that is, T.L.).

Our construction is consistent with the construction given to the term "parent" in former section 361.5, subdivision (b)(10)(B) (now § 361.5, subd. (b)(11)). At issue in *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586 [110 Cal.Rptr.2d 679] (*Francisco G.*) was former section 361.5, subdivision (b)(10)(B), involving the denial of reunification services where the parental rights of a parent or guardian over any sibling or half sibling have been terminated. The former statutory provision permitted the juvenile court to deny reunification services when the court found: "That . . . (B) the parental rights of a parent or guardian over any sibling or half-sibling of the child had been permanently severed, and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent or guardian." (91 Cal.App.4th at p. 597.)

In *Francisco G.*, the presumed father of the child involved in the current proceeding argued that because his status in a previous dependency proceeding involving the child's siblings was that of biological father or *alleged father*, he was not a "parent" within the meaning of the former statutory provision. The Court of Appeal rejected his construction of the statute: "[W]hen read in context, we believe that the term 'parent' as used in section 361.5, subdivision (b)(10)(B) refers to petitioner's status in the current dependency proceedings and not to petitioner's parental status in the sibling's

dependency proceedings. In other words, the usage of the term 'parent' simply refers to the fact that petitioner is only otherwise entitled to reunification services because he is the presumed father of the child . . . who is the subject of the current dependency proceedings. Such usage does not refer to the nature of the previously terminated rights, but rather to petitioner's current status in the current dependency. As a result the bypass provision can be appropriately applied to a father whose parental rights as an alleged or biological father of a sibling or half sibling have been terminated." (*Francisco G.*, *supra*, 91 Cal.App.4th at p. 598.)

The court in *Francisco G.* further explained that "such interpretation is in harmony with the underlying purpose of the dependency scheme to protect the welfare and best interests of the child. To bar application of the instant bypass provision simply because the child's parent did not achieve presumed father status as to the sibling or half sibling would be to ignore the best interests of the child. If the child's parent has suffered the previous termination of parental rights as to a sibling or half sibling, there is the potential that providing reunification services would be fruitless in light of the parent's past history. It is in the child's best interest to permit the juvenile court to examine such past history and make the appropriate bypass determination rather than delay permanency for the child." (*Francisco G.*, *supra*, 91 Cal.App.4th at p. 598.)

■ Although the instant case involves section 361.5, subdivision (b)(6), which covers the situation where a parent or guardian has inflicted severe physical harm on a sibling of the child who is the subject of the current proceeding, the principles and policies discussed in *Francisco G.* apply equally to this case. We therefore conclude that section 361.5, subdivision (b)(6) is appropriately applied to a father who is neither the parent nor the guardian of the physically abused sibling of the child involved in the current proceeding. The juvenile court properly applied the statute to Father.

## DISPOSITION

The petitions for an extraordinary writ are denied.

Rothschild, J., concurred. Vogel, J., concurred in the judgment only.