[No. C058569. Third Dist. June 30, 2008.]

MARDARDO F., Petitioner, v.
THE SUPERIOR COURT OF YOLO COUNTY, Respondent;
YOLO COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL
SERVICES et al., Real Parties in Interest.

**COUNSEL**

Linda R. Case for Petitioner.

No appearance for Respondent.

Robyn Truitt Drivon, County Counsel, and Jennifer Cretcher-McCoy, Deputy County Counsel, for Real Party in Interest Yolo County Department of Employment and Social Services.

Christina Zambrano Beede for Real Party in Interest Yvonne M.

Alice M. Meserve for Real Party in Interest Minor.

**OPINION**

**DAVIS, J.**—In this child dependency proceeding, we interpret Welfare and Institutions Code section 361.5, subdivision (b)(4), which states: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (4) That the parent or guardian of the child has caused the death of another child through abuse or neglect."[1]

---

[1] Hereafter, undesignated section references will be to the Welfare and Institutions Code. Section 361.5, subdivision (b)(4), will be referred to as "section 361.5(b)(4)."

We conclude the juvenile court properly applied this statute in denying reunification services to the 28-year-old father here, who, when he was 15, murdered a 13-year-old girl. We conclude that the phrase "the parent or guardian of the child" in section 361.5(b)(4) refers merely to the parent's or the guardian's current status in the current dependency proceeding, and the phrase "the death of another child" in the section means the death of any other child.

We also uphold the juvenile court's accompanying finding under section 361.5, subdivision (c), that it would not be in the child's best interest here to be reunified with the father. Section 361.5, subdivision (c) allows a parent described in section 361.5(b)(4) to still be offered reunification services if "the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."

BACKGROUND

Mardardo F. (Father), the father of S.F. (the minor), has petitioned for a writ of mandate to vacate orders of the juvenile court denying him reunification services and scheduling a section 366.26 permanent plan hearing. (Cal. Rules of Court, rule 8.452.)

The juvenile court assumed jurisdiction over the three-month-old minor in September 2007, after sustaining a dependency petition alleging there was a substantial risk the minor would suffer serious physical harm. (§ 300, subds. (a), (b), (j).)

As to Father, the dependency petition was based on the following facts.[2] Father raped and murdered a 13-year-old girl in 1994 when he was 15 years old. He was committed to the California Youth Authority (CYA; now the Department of Corrections and Rehabilitation, Division of Juvenile Justice) for a term of 25 years to life for the murder. At the end of April 2004, when he was 25, Father was dishonorably discharged from the CYA.

After reviewing Father's CYA records, the Yolo County Department of Employment and Social Services (Department) concluded that Father had not benefited from his CYA commitment and remained a threat to society. The Department also noted that Father had been diagnosed with antisocial personality disorder.

---

[2] Yvonne M., the mother of the minor, has not sought review and is no longer involved in this proceeding. However, her counsel appeared at oral argument.

At the March 2008 disposition hearing, the Department argued successfully that Father should be denied reunification services; the Department relied primarily on section 361.5(b)(4). The Department also argued successfully that, given section 361.5(b)(4)'s application, there was no clear and convincing evidence that reunification services would be in the minor's best interest. (See § 361.5, subd. (c).) After making findings in line with the Department's two successful arguments, the juvenile court set a section 366.26 hearing for July 25, 2008, to select a permanent plan for the minor. We have stayed that hearing pending our further order.

We will set forth other facts in our discussion of the issues.

DISCUSSION

1. *The Interpretation of Section 361.5(b)(4)*

■ "Our objective in interpreting a statute is to determine legislative intent so as to effectuate the law's purpose. The first thing we do is read the statute, and give the words their ordinary meanings unless special definitions are provided. If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids," including, as we will use here, statutory context and legislative history. (*Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545 [124 Cal.Rptr.2d 571], fns. omitted; *Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562 [11 Cal.Rptr.2d 222].)

■ As a general rule, reunification services are offered to parents whose children are removed from their custody because the law strongly prefers maintaining the family relationship if at all possible. (§ 361.5, subd. (a); *In re Ethan N.* (2004) 122 Cal.App.4th 55, 63 [18 Cal.Rptr.3d 504] (*Ethan N.*).) Limited exceptions to this general rule—termed reunification bypass provisions—are listed in section 361.5, subdivision (b). (*Ethan N., supra,* 122 Cal.App.4th at pp. 63–64; see *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 590 [110 Cal.Rptr.2d 679] (*Francisco G.*); see also *In re Angelique C.* (2003) 113 Cal.App.4th 509, 512 [6 Cal.Rptr.3d 395].) Once it is determined that one of these bypass provisions applies, " 'the general rule favoring reunification is replaced by a legislative assumption that offering [reunification] services would be an unwise use of governmental resources.' " (*Ethan N., supra,* 122 Cal.App.4th at p. 65, quoting *In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 478 [73 Cal.Rptr.2d 793].)

With these principles in mind, we turn to the language of section 361.5(b)(4).

### a. *Language of section 361.5(b)(4)*

Section 361.5(b)(4) states: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (4) That the parent or guardian of the child has caused the death of another child through abuse or neglect."

The two phrases in subdivision (b)(4)—"the parent or guardian of the child" and "the death of another child"—are ambiguous. For example, do these phrases refer only to a parent or guardian who has caused the death of another child of the parent or guardian? Or do they include a parent or guardian who has caused the death of any child? Must the person who has caused the death of another child have been a parent or guardian at the time of causing the death? Or does the phrase "the parent or guardian of the child" refer simply to the parent's or the guardian's current status in the current dependency proceeding?

The language of section 361.5(b)(4) does not provide an answer to these musings. Consequently, we must look to interpretive aids. Here, we shall look to the statutory context and legislative history.

### b. *Statutory context*

In construing statutes, we consider the statutory language in the context of the entire statute and the statutory scheme of which it is a part. (*Anthony J. v. Superior Court* (2005) 132 Cal.App.4th 419, 425 [33 Cal.Rptr.3d 677] (*Anthony J.*).) Provisions relating to the same subject matter must be harmonized to the extent possible. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

The key to deciphering section 361.5(b)(4) is to determine the meaning of its two critical phrases: "the parent or guardian of the child"; and "the death of another child." Father reads these two phrases narrowly as applying only to a parent or guardian who, as a parent or guardian, has caused the death of one of his own children.[3] We reject this narrow interpretation as to both

---

[3] At oral argument, Father broadened his reading of section 361.5(b)(4) as simply referring to a parent or adult.

parent and child, and thereby arrive at a more child-protective reading of section 361.5(b)(4).

■ We begin with the section 361.5(b)(4) phrase "the death of another child." Interpreting this phrase as limited to one's own child is an interpretation that we readily reject. This is because section 361.5, subdivision (b), enumerates other exceptions to providing reunification services where the parent, for example, has abused, or not received reunification services for, or failed to reunify with, or had his or her parental rights terminated as to, the child's "sibling" or "half sibling." (See § 361.5, subd. (b)(6), (7), (10), (11).)[4] As the Department persuasively argues, section "361.5(b)[4] must be read exactly as is; it cannot be read to include phrases such as 'caused the death of another child *of the parent.*' The fact that the [L]egislature specifically included the [terms] 'sibling' and 'half sibling' in other subdivisions of § 361.5(b) [but did not make analogous familial references in (b)(4)] indicates [its] intent that § 361.5(b)(4) does not require that the parent be related to the child that died." So, the deceased child in section 361.5(b)(4) need not be related to the parent. And, we observe that the Legislature knows how to specify a family context in section 361.5, subdivision (b), when it wants to do so.

That brings us to the tougher nut to crack—the section 361.5(b)(4) phrase "the parent or guardian of the child." Father interprets this phrase as meaning that the person who has caused the death of another child must have been a parent or guardian at the time of the death. Father reads section 361.5(b)(4) as not applying to him because he was but a child (nonparent) at the time he caused the death of another child. Father elaborates: "It is a stretch of the imagination to accept that the Legislature, while developing standards to guide the juvenile courts when addressing parental rights to reunifications[,] even contemplated that subsection (4) of subdivision (b) of section 361.5 was intended to apply to one child killing or participating in the killing of another child."

We observe initially that Father's interpretation ignores the language in section 361.5(b)(4) that the cause of death must be "through abuse or neglect." This language signifies culpability, a concept that applies to Father. At 15 years old, Father raped and murdered a 13-year-old girl, and he was committed to CYA for 25 years to life for the murder. The present case, as

---

[4] For simplicity, and because here we are dealing with a parent rather than a guardian, we may at times speak in terms of "parent" only. What we say, however, also applies to the term "guardian" in section 361.5(b)(4).

well as section 361.5(b)(4) itself, does not concern mere tragic horseplay among children.

Still left for resolution, though, is the meaning of the phrase "the parent or guardian of the child." Two decisions guide our analysis: *Anthony J., supra,* 132 Cal.App.4th 419, and *Francisco G., supra,* 91 Cal.App.4th 586, both of which read broadly the section 361.5, subdivision (b) bypass provisions (reunification exceptions) before them.

*Anthony J.* held that the section 361.5, subdivision (b) bypass provision involving a parent having previously inflicted severe physical harm on the child's half siblings (§ 361.5, subd. (b)(6)) applied to the child's father in the child's current dependency proceeding even though the child's father was not the father of the half siblings he physically abused. (§ 361.5, subd. (b)(6); *Anthony J., supra,* 132 Cal.App.4th at pp. 421–423.) *Francisco G.* held that the section 361.5, subdivision (b) bypass provision involving parental termination as to a child's sibling or half sibling (formerly § 361.5, subd. (b)(10)(B); now § 361.5, subd. (b)(11)) applied to the child's father in the child's current dependency proceeding even though the father was only an alleged or biological father, not a presumed father (a parent), in the termination (prior dependency) proceeding. (*Francisco G., supra,* 91 Cal.App.4th at pp. 598–599.)

*Anthony J.* concluded that "the parental relationship in [the section 361.5, subdivision (b)(6) bypass provision at issue there] refers to the relationship between the parent [who] inflict[ed] the harm [on the half siblings] . . . and the child whose reunification services are at issue in the current proceeding . . . ." (*Anthony J., supra,* 132 Cal.App.4th at p. 426.) Quoting from *Francisco G.,* the court in *Anthony J.* explained: " '[W]hen read in context, . . . the term "parent" as used in [the section 361.5, subdivision (b) bypass provisions at issue in *Anthony J.* and *Francisco G.*] refers to [the parent's] status in the current dependency proceedings and not to [the parent's] parental status in the sibling's dependency proceedings. In other words, the usage of the term "parent" simply refers to the fact that [the parent] is only otherwise entitled to reunification services because he is the presumed [parent] of the child . . . who is the subject of the current dependency proceedings. Such usage does not refer to the nature of the previously terminated rights, but rather to [the parent's] current status in the current dependency.' " (*Anthony J., supra,* 132 Cal.App.4th at pp. 426–427, quoting *Francisco G., supra,* 91 Cal.App.4th at p. 598.)

*Anthony J.* further explained, again quoting from *Francisco G.,* that " 'such interpretation is in harmony with the underlying purpose of the dependency scheme to protect the welfare and best interests of the child [in the current

dependency proceeding]. . . . If the child's parent has suffered the previous termination of parental rights as to a sibling or half sibling, there is the potential that providing reunification services would be fruitless in light of the parent's past history. It is in the child's best interest to permit the juvenile court to examine such past history and make the appropriate bypass determination rather than delay permanency for the child.' " (*Anthony J., supra,* 132 Cal.App.4th at p. 427, quoting *Francisco G., supra,* 91 Cal.App.4th at p. 598.)

▉ In applying the interpretive reasoning of *Anthony J.* and *Francisco G.* to the section 361.5(b)(4) phrase "the parent or guardian of the child," we interpret this phrase to mean merely the parent's or the guardian's current status in the current dependency proceeding. The phrase does not mean that one must have been a parent or guardian at the time of causing the death of another child.

Our interpretation is bolstered by three additional observations involving statutory context.

First, our interpretation affords greater protection to the child in the current dependency proceeding, in a context deserving of that greater protection. Section 361.5(b)(4) involves a "parent or guardian of the child [who] *has caused the death of another child through abuse or neglect.*" (Italics added.) One court has characterized such behavior as "simply too shocking to ignore" in the reunification equation. (*In re Alexis M.* (1997) 54 Cal.App.4th 848, 851 [63 Cal.Rptr.2d 356] [admittedly, the facts in *Alexis M.* involved a father who abused and killed the infant brother of the infant child in the dependency proceeding].) Another court has recognized "the enormous hurdle faced by a parent seeking reunification with a child after previously causing the death of another by abuse or neglect. . . . [¶] . . . 'The enormity of a death arising out of . . . child abuse swallows up almost all, if not all, competing concerns.' " (*Ethan N., supra,* 122 Cal.App.4th at p. 68, quoting *Alexis M., supra,* 54 Cal.App.4th at p. 853, fn. 5.) As the Department persuasively echoes along these lines, section 361.5(b)(4) "evidences the Legislature's recognition that some situations are so extreme as to require extraordinary caution in recognizing and giving weight to the usually desirable objective of family preservation."

Second, we must consider section 361.5, subdivision (b)(12). This reunification bypass provision parallels section 361.5(b)(4) and also includes the phrase "the parent or guardian of the child." It provides: "(12) That the parent or guardian of the child has been convicted of a violent felony, as defined in

subdivision (c) of Section 667.5 of the Penal Code [e.g., murder, rape, mayhem, robbery]." Given the parallels between subdivision (b)(4) and (12), the interpretation of the phrase "the parent or guardian of the child" in the two subdivisions would likely parallel one another. Consequently, if "the parent or guardian of the child" in subdivision (b)(4) of section 361.5 means the person must have been a parent or guardian at the time he or she caused the death of the other child, then "the parent or guardian of the child" in subdivision (b)(12) must likewise mean the person must have been a parent or guardian at the time he or she was convicted of a violent felony. To set forth such a cramped interpretation of "parent or guardian of the child" is to reject it.

And finally, construing the phrase "the parent or guardian of the child" to mean merely the parent's or the guardian's current status in the current dependency proceeding is clear and effective. This interpretation does not raise problematic—but largely irrelevant—issues as to whether the parent or guardian was actually a parent or guardian at the moment he or she caused the death of another child through abuse or neglect. Reading section 361.5(b)(4) in the broader, more child-protective fashion, as we have, still leaves the door of reunification services and family preservation ajar for the meritorious section 361.5(b)(4) parent or guardian. Under section 361.5, subdivision (c), a parent or guardian who has caused the death of another child through abuse or neglect may still obtain reunification services by showing, by clear and convincing evidence, that reunification is in the best interest of the child in the current dependency proceeding. (§ 361.5, subd. (c), 2d par.; see *Ethan N., supra*, 122 Cal.App.4th at p. 66; *Karen S. v. Superior Court* (1999) 69 Cal.App.4th 1006, 1011 [81 Cal.Rptr.2d 858] (*Karen S.*).)

### c. *Legislative history*

A broader, more child-protective reading of section 361.5(b)(4) than that tendered by Father is also indicated by the section's legislative history.

Before 1997, the section 361.5(b)(4) bypass provision required that the parent or guardian have been "*convicted* of causing the death of another child through abuse or neglect." (See Historical and Statutory Notes, 73 West's Ann. Welf. & Inst. Code (1998 ed.) foll. § 361.5, p. 367, italics added.) Starting in 1997, section 361.5(b)(4) has required only that the parent or guardian have "*caused* the death of another child through abuse or neglect." (See Stats. 1996, ch. 1083, § 2.5, pp. 7520, 7522, italics added; *id.*, § 10, p. 7597.)

Deleting the conviction requirement was designed to expand the scope of children to whom the section 361.5(b)(4) bypass provision may apply, as well as to speed up the termination of parental rights in cases in which it is deemed unlikely that a parent will successfully and safely reunify with a child. (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2679 (1995–1996 Reg. Sess.) as amended May 14, 1996, pp. b–d, f, *o–p*.)

The legislative changes made to section 361.5(b)(4)'s sister provision of section 361.5, subdivision (c), also evidence a broadening of section 361.5(b)(4)'s child protectiveness. Before 1997, section 361.5, subdivision (c) stated, as pertinent, that "[w]hen paragraph . . . (4) . . . of subdivision (b) is applicable, the court shall not order reunification *unless it finds that, based on competent testimony*, those services are likely to prevent reabuse or continued neglect of the child or that failure to try reunification will be detrimental to the child because the child is closely and positively attached to that parent." (See Historical and Statutory Notes, 73 West's Ann. Welf. & Inst. Code (1998 ed.) foll. § 361.5, subd. (c), p. 367, italics added.) Starting in 1997, section 361.5, subdivision (c) has provided, as pertinent, that "[t]he court shall not order reunification for a parent or guardian described in paragraph . . . (4) . . . of subdivision (b) *unless the court finds, by clear and convincing evidence*, that reunification is in the best interest of the minor." (Stats. 1996, ch. 1083, § 2.5, pp. 7520, 7523–7524, 2d par., italics added.)

This concern with ensuring the protection of children is further exemplified by section 361.5(b)(4)'s dependency-jurisdiction counterpart, section 300, subdivision (f), which states in substantively identical terms to section 361.5(b)(4): "(f) The child's parent or guardian caused the death of another child through abuse or neglect." The court in *In re Jessica F.* (1991) 229 Cal.App.3d 769 [280 Cal.Rptr. 349, 282 Cal.Rptr. 303] penned the following words regarding subdivision (f) of section 300 that we may substitute in our interpretation of section 361.5(b)(4): "As part of the statutory revision [that added subdivision (f) to section 300], the Legislature set out a statement of its intent, including the statement that, 'It is the intent of the Legislature in enacting this section to provide maximum protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to protect children who are at risk of that harm.' (§ 300.) [¶] If the general purpose and intent of the 1987 revision of section 300 is to provide '*maximum protection for children*,' then we must interpret subdivision (f) in a manner consistent with that intent and purpose." (*Jessica F., supra*, 229 Cal.App.3d at p. 777, original italics.)

■   We conclude that the phrase "the parent or guardian of the child" in section 361.5(b)(4) refers merely to the parent's or the guardian's current status in the current dependency proceeding, and the phrase "the death of

another child" in the section means the death of any other child. The trial court properly found that section 361.5(b)(4) applied to Father.

## 2. Showing Regarding Reunification in Best Interest of Child

Since section 361.5(b)(4) applies to Father, so too does section 361.5, subdivision (c). Section 361.5, subdivision (c) specifies, as pertinent, that the "court shall not order reunification for a parent or guardian described in paragraph . . . (4) . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child." It is the section 361.5(b)(4) parent's burden to "affirmatively show that reunification would be in the best interest" of the child. (*Ethan N., supra*, 122 Cal.App.4th at p. 66; see also *Karen S., supra*, 69 Cal.App.4th at p. 1011.)

As the juvenile court found, Father came nowhere close to meeting this burden.

Father presented evidence that he interacted appropriately with the minor and the minor's half sibling during visits.

Evidence also showed, however, that Father had committed a brutal rape-murder of a child when he was 15 years old. He was dishonorably discharged from CYA in April 2004 when he was 25 years old. According to CYA records, at the time of his discharge, he remained a threat to society, failed to complete a sex offender program, had been diagnosed with antisocial personality disorder, and had little or no insight into his offense. Throughout the course of his CYA commitment, he engaged in violent and sexually inappropriate behavior.

After his discharge from CYA, Father was involved in two episodes of domestic violence, one of which resulted in a conviction for disturbing the peace. He was also convicted of failing to register as a sex offender.

Father remained sexually involved with both the mother of the minor as well as the mother of the minor's half sibling while the two women were unaware of this behavior.

Finally, a psychological evaluation of Father in September 2007 disclosed that his personality functioning reflects a clear tendency to violate the basic rights of others, disregard social norms and expectations, and engage in antisocial behaviors.

## DISPOSITION

The petition for extraordinary writ is denied. The stay of proceedings previously issued by this court is vacated upon the finality of this decision.

Scotland, P. J., and Morrison, J., concurred.