Filed 4/6/15  In re D.B. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re D.B. et al., Persons Coming Under the Juvenile Court Law. | C076161 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.E.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD233972 & JD233973) |

J.E. (mother) appeals from the juvenile court's dispositional order bypassing reunification services to her as to minors D.B. and M.B., Jr.  (Welf. & Inst. Code, § 361.5, subd. (b)(10), hereafter section 361.5(b)(10).)[1]  Mother contends:  (1) the statute does not apply because she is not the parent from whom custody of the minors' half sibling was removed in the prior dependency; (2) the record does not establish the

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

reasons for the prior dependency, so the juvenile court could not make the requisite findings by clear and convincing evidence as to whether mother had made the reasonable efforts required under the statute; (3) the prior services received by mother do not warrant denial of services in this case; (4) mother's efforts toward reunification prior to the disposition hearing are evidence that reunification efforts would not be wasted; (5) the social worker's summary of the services provided to mother in a prior proceeding did not constitute substantial evidence; (6) because reunification services were ordered for the minors' presumed father even though he also had a prior failed reunification with the minors' half sibling, it was improper not to order services for mother.

The Sacramento County Department of Health and Human Services (department) responds that mother has forfeited her statutory claim, but even if properly before us it lacks merit; furthermore, mother did not meet her burden under section 361.5, subdivision (c), to prove that granting services to her would be in the minors' best interest.

We conclude that mother's statutory claim is not forfeited and section 361.5(b)(10) is facially inapplicable. We shall remand with directions that the juvenile court vacate its order bypassing services to mother and enter a new order granting services. We do not address the parties' remaining contentions.

### FACTUAL AND PROCEDURAL BACKGROUND

**The Section 300 Petition**

On October 31, 2013, the department filed a petition under section 300, subdivisions (b) and (j), as to D.B. (born in Mar. 2012) and M.B., Jr. (born in May 2011). The petition alleged: (1) Mother had more than once left the minors in the care of an inappropriate care provider with a significant history of Child Protective Services (CPS) contacts and substance abuse. (2) On April 25, 2013, the minors' half sibling K.B. was declared a ward of Yuba County Juvenile Court due to parental substance abuse and mother's failure to provide adequate care and supervision for the minors. (3) On

2

October 23, 2013, the Yuba County Juvenile Court ordered the termination of mother's reunification services as to K.B. (4) The minors' half siblings M.B. (born in May 2003) and A.B. (born in Mar. 2002) were made dependents of the Sacramento County Juvenile Court at an unspecified date; the parental rights of the father M.B. were terminated on October 27, 2004; and the minors were subsequently adopted.

**The Detention Report**

According to the detention report, mother went out of town, leaving the minors with an acquaintance from Loaves and Fishes, Joyce G., who had an extensive history of CPS and juvenile court involvement due to substance abuse. On her return, mother failed to pick up the minors, then denied knowing anything about Joyce G. The minors were found safe and sound after the police located an address for Joyce G.

Mother, who was homeless, was found at a Motel 6 in downtown Sacramento in the company of an adult male, A.H., before the minors were located. She said she had been living there with the minors, A.H., and two other people in a single room since October 20, 2013. She and A.H. had gone to Reno on October 23 to try to find work and a place to live; before leaving, she left the minors with Joyce G. Joyce G. gave mother a phone number but not an address. When mother returned to Sacramento on October 26, she called Joyce G., but the phone had been cut off. Mother looked for her near a homeless camp, but did not find her.

Mother and M.B., the minors' biological father, received informal supervision services beginning in May 2011, following the birth of M.B., Jr. During the pregnancy, mother tested positive for methamphetamine, though she claimed she had not used it in two years. Mother and the minor tested negative for illegal substances at the time of birth.

M.B. said he and mother had been together for four years. He denied substance abuse. However, he was discharged from early intervention family drug court in December 2011, following two positive tests for methamphetamine. Mother's case was

3

closed in February 2012 after she completed her case plan objectives and moved into transitional housing with M.B., Jr., but she was soon discharged from the transitional housing because she had a new boyfriend (K.L.) visiting, in violation of the rules.[2]

According to documentation from the Yuba County juvenile dependency case, the minors' half sibling, K.B., was removed *from the custody of her father*, J.B., in January 2013.[3]  In April 2013, the juvenile court ordered reunification services for mother and J.B.  However, mother failed to contact the social worker for six months or to engage in her case plan.  Mother had also failed to contact the social worker in the present case to inquire about K.B.'s safety and welfare and "had shown no interest in the child."  On October 23, 2013, the Yuba County Juvenile Court terminated mother's reunification services.

**Initial Hearing**

On November 1, 2013, the juvenile court detained the minors and set a prejurisdiction status hearing for December 2, 2013.

**Jurisdiction/Disposition Report**

The jurisdiction/disposition report recommended that the juvenile court place the minors in out-of-home care and deny reunification services to mother.

---

[2]  K.L., the minors' alleged father, was the father of another half sibling of the minors in the present case.  He was not their biological father, but his name was on D.B.'s birth certificate as the father.  He began living with mother when she was pregnant with D.B., after mother separated from M.B.  At disposition, the juvenile court declared him the minors' presumed father and ordered reunification services for him.  He is not a party to this appeal.

[3]  The detention report does *not* state that mother was living with J.B. or sharing custody of K.B. with him when K.B. was removed from J.B.'s home.  On the contrary, it states that when K.B.'s case came to the attention of Yuba County CPS in November 2012, mother was homeless in Fort Bragg.

4

The report recommended bypassing reunification services to mother under section 361.5(b)(10), which provides that a parent is not entitled to services if "the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed *from that parent . . . pursuant to Section 361* and *that parent . . .* is the same parent . . . described in subdivision (a) and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to *removal of the sibling of half sibling of that child from that parent . . . .*"[4] (Italics added.) The report stated: "Available Court Minute Orders indicate the mother was Court-ordered reunification services on April 25, 2013 as to the half-sibling, [K.B.] The mother's Court-ordered reunification services included, but were not limited to, mental health counseling and substance abuse services. However, according to the Status Review Report written by the mother's Social Worker, Cheryce Williams, the mother did not make any contact with her to request visitation or to begin her case plan services. Social Worker Williams reported the mother was provided with the Notice of Status Review Hearing on October 3, 2013 but still failed to contact her to inquire about the welfare and safety of the child. Social Worker Williams indicated the mother had shown no interest in reunifying with the child. On October 23, 2013, the mother's reunification services were terminated by the Yuba County Juvenile Court due to her non-compliance with her Case Plan, lack of progress, and lack of visitation with the child. Based on the available evidence, the mother has continued to engage in a

---

[4] Under section 361, the removal of a child from the child's parent is defined as removal from the parent's *physical* custody (§ 361, subd. (c), (c)(1), (c)(2), (c)(3)) or simply as removal from the parent (§ 361, subds. (c)(4), (e)(1)). Legal custody, as distinct from physical custody, is not mentioned in the statute. In any event, as will appear, the Yuba County Juvenile Court expressly found that K.B.'s father had physical custody of her when the proceeding began.

5

lifestyle that places the children at substantial risk of physical harm and/or abuse. The mother not only practices dangerous parenting, but she is unable to care for the children at this time due to her homelessness and inability to provide adequate shelter for the children. The mother admitted to law enforcement that she had been using methamphetamine despite the fact that she denied she has a substance abuse problem when interviewed by the undersigned. The mother did not test as directed and her behaviors, both during the half-sibling's case and the current situation[,] are those of a person with a substance abuse problem. There is no evidence the mother has participated in any services or made reasonable efforts to treat the concerns that prompted the Yuba County Dependency Court to order the mother to complete reunification services." The report did not discuss whether mother had custody of K.B. when the Yuba County proceedings began.

The report also found that it would not be in the minors' best interest to reunify with mother. (§ 361.5, subd. (c).) The probability of reunifying with the one- and two-year-old minors in the next six months was very low, given mother's homelessness, unemployment, and possible substance abuse. In the Yuba County case she had made no effort to begin services or visit K.B. during the prior six months, leading to the termination of services. She blamed her social worker in that case for her own failures. In the present case, she had resisted beginning services and drug testing and had not yet visited the minors.[5]

---

[5] The report also recommended that the juvenile court bypass services to presumed fathers M.B. and K.L. under section 361.5, subdivisions (b)(10) and/or (b)(11), and find that it would not be in the minors' best interest under section 361.5, subdivision (c), to reunify with them. In an addendum report, however, the department recommended reunification services for K.L., finding there was no evidence section 361.5 applied to him. At disposition, the juvenile court found M.B. was not the presumed father and dismissed him from the case.

Attached to the report are photocopies of documentation from the Yuba County dependency case involving K.B., including selected pages from the minute orders of the jurisdiction, disposition, and six-month review hearings and the social workers' reports. This documentation shows the following:

At the jurisdiction hearing, mother requested placement or visitation, but the juvenile court denied the request. There is no finding as to whether mother had physical custody of K.B. when proceedings began.

At the disposition hearing, mother received reunification services and visitation. The juvenile court made the following findings: "By clear and convincing evidence, there is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child if the child were returned home, and there are no reasonable means by which the child's physical health can be protected without removing the child *from the physical custody of the father,* [*J.B.*]"; "Reasonable efforts were made to prevent or to eliminate the need for the removal of the child *from the father and mother's home* as outlined in the Dispositional Hearing Report"; and "[K.B.] [shall] be removed *from the physical custody of the father. . . .*"[6] (Italics added.)

At the six-month review hearing, mother's reunification services were terminated. The juvenile court found that "[t]he return of [K.B.] *to the physical custody of the father,* [*J.B.*], would not create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child," and "[t]he permanent plan of return *to the*

---

[6] No part of the dispositional hearing report is in the record. Therefore, we cannot determine the basis for the finding as to "the father and mother's home." However, the home might have been mother's nominal residence even if she was no longer living there when K.B. was detained. As noted, the detention report in the present case stated that mother was homeless in Fort Bragg as of November 2012, when K.B.'s case came to the notice of Yuba County CPS.

*home of the parent,* [*J.B.*], is appropriate and is ordered as the permanent plan." (Italics added.)

**Addendum Report**

In a report filed March 20, 2014, the department termed mother's participation in services and drug testing from November 2013 to the present "minimal." The department still recommended denying reunification services to mother because her prognosis for making substantial progress within the legal time frame was poor.

**Contested Jurisdiction/Disposition Hearing**

At the contested jurisdiction/disposition hearing on March 21, 2014, mother's counsel stated: "[M]other . . . would be submitting with a small argument as to services. She has tried to engage in services since the detention of the children. And she has been drug testing regularly. She had missed two tests, but the remaining tests have been, according to her, negative for all substances. And I don't think there is any indication that she's tested positive anywhere. So the information contained in the addendum for 3/20 is accurate according to the mother. And it does say she has completed some classes. And it does say that she has been a little bit reticent [*sic*; reluctant] to get involved in all of her classes. But she has been doing some and would like the Court to take into consideration what she has done more so than what she's not done."

County counsel stated: "[T]he only issue is services to the mother . . . . *So I didn't hear her dispute that (b)(10) applies to her. I believe--I would ask [mother's counsel] to correct me if I'm wrong--what he was arguing is pursuant to subsection (c) she should be given services.*" (Italics added.) Mother's counsel replied: "*That is correct.*" (Italics added.) The juvenile court added: "That was my understanding."

County counsel argued that section 361.5, subdivision (c) did not apply to mother because her conduct at the outset was "very egregious"; she had not been honest about her substance abuse or come to terms with it; she had failed to begin services or substance abuse treatment in K.B.'s very recent case; she had begun services in this case

8

very late and had to be prodded to do everything, repeating that she was "too busy"; she had a pattern of homelessness; she had used methamphetamine daily until 2011; and she had not "shown a great concern for her children's welfare."

The juvenile court denied reunification services to mother on the following grounds:

"[T]he Department is seeking to deny services pursuant to 361.5(b)(10), which is a two-prong test followed by analysis under Section 361.5(c). ([B])(10) . . . states that Reunification services need not be provided to a parent when the Court finds by clear and convincing evidence that the Court ordered termination of reunification services for any siblings or half siblings because the parent failed to reunify with those siblings or half siblings that were removed from that parent, and it is the same parent, and that parent has not subsequently made a reasonable effort to treat the problems that led to removal.

"The Department alleges that [mother] received reunification services for a half sibling and failed to reunify with that child. The evidence is that [mother] was ordered services in [K.B.]'s case on or about April 25th, 2013. . . . *That child was removed from* [*mother*]. She was ordered services, including mental health counseling and substance abuse. On or about October 23rd, 2013 Yuba County terminated [mother]'s reunification services due to lack of progress and visiting.

"[Mother] is the same parent, and the current petition alleg[es] similar facts as the prior case. She left her children with an inappropriate caretaker and failed to protect due to her lengthy substance abuse history. The (j) petitions allege a failure to provide adequate care and substance abuse as to the sibling. Therefore, we do have the same parent and the same or similar issues bringing [D.B.] and [M.B., Jr.] to court.

"Subsequent reasonable efforts since October. We know that the mother left the children in the care of [Joyce G.], who . . . [mother] did not know her last name, didn't have an address or phone number for her. The mother went to Reno. During her arrest in October of 2013 she admitted being under the influence of methamphetamine[]. The

9

Department actively gave her referrals on a number of occasions for a variety of service providers after the filing of the petition.

"And in the ensuing almost five months [mother] has not started general counseling or done intake, not started domestic violence counseling. She has attended some parenting classes, began drug testing in January. She's had approximately six tests and missed a couple of tests. The Department reminded [mother] several times about the importance of services and indicated she was not receptive. They concluded from this, and it influenced their decision . . . not to recommend services as [mother] . . . indicated she didn't understand why she should have to do them over. She's also not followed through on seeking a shelter or other services. The Department concluded that her minimal compliance gave her a poor prognosis for reunification.

"The Court concludes that based on the totality of acts and circumstance, [mother] has not made a reasonable effort to treat the problems that led to the half siblings' removal, primarily the long substance abuse history and short period of some compliance with drug testing but no evidence of drug treatment." (Italics added.)

The court then concurred with the department that section 361.5, subdivision (c) did not justify the provision of services to mother.

The court subsequently entered the order denying services from which mother appeals.

**DISCUSSION**

Mother contends no substantial evidence supports the juvenile court's finding that section 361.5(b)(10) applied because the minor's half sibling in the prior proceeding was not removed *from her*. Mother is correct.

"Section 361.5 is clearly directed to the custodial parent or parents. The section comes into play 'whenever a minor is removed from a parent's or guardian's custody, . . .' [Citation.] There can be no removal of custody from a parent who does not have custody in the first place. . . . [The statute] does not, by its terms, encompass the

10

situation of the noncustodial parent." (*In re Terry H.* (1994) 27 Cal.App.4th 1847, 1856, superseded by statute on another point as stated in *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233, fn. 7.) Thus, sections 361 and 361.5, read together, compel the conclusion that a parent cannot be denied reunification services under section 361.5(b)(10) unless he or she was also the parent from whom the minor's sibling or half sibling was removed in the prior proceeding, and a child can be "removed" from the parent within the meaning of section 361.5(b)(10) only if the parent had custody of the child when detained.

No evidence established that mother had custody of K.B. when the Yuba County proceeding began. On the contrary, all the evidence in the record (except for the equivocal phrase "the father and mother's house," which is consistent with the evidence that mother had once lived there but no longer did) shows that only K.B.'s father had custody of her at that time. Thus, the first prong of section 361.5(b)(10) was not satisfied because K.B. was not removed from mother's custody.

"There is a presumption in dependency cases that parents will receive reunification services. [Citation.] Section 361.5, subdivision (a) directs the juvenile court to order services *whenever* a child is removed from the custody of his or her parent *unless* the case is within the enumerated exceptions in section 361.5 subdivision (b). [Citation.]" (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95.) Because no evidence supported the juvenile court's finding as to the first prong of section 361.5(b)(10), the only provision cited to deny reunification services to mother, the order denying services to mother must be vacated.

The department asserts that mother has forfeited this contention because her trial counsel conceded the statute applies. We disagree. As the department recognizes, mother attacks the sufficiency of the evidence to support the judgment. "[A] claim that there is insufficient evidence to support the judgment is not waived by a failure to

11

object." (*In re M.B.* (2010) 182 Cal.App.4th 1496, 1506; see *In re Richard K.* (1994) 25 Cal.App.4th 580, 588-589; *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237.)[7]

On the merits, the department asserts that it does not matter whether mother was "the same parent" from whom K.B. was removed in the prior proceeding--it is enough that she is "the same parent" whose services were terminated in that proceeding. This contention is not properly before us, and lacks merit in any event.

The department did not assert this legal interpretation of section 361.5(b)(10) below. Rather, it attempted to prove, as required by the statute's plain language, that mother was the parent from whose custody K.B. was removed in the prior proceeding. The department may not change its theory of the case on appeal. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29.)

But even if we may consider this new contention, it fails. The department quotes section 361.5(b)(10) only in part, omitting the crucial language we have highlighted, and cites only to case law construing other provisions.

The department relies on *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586 (*Francisco G.*). Its reliance is misplaced. There, the appellate court upheld the denial of reunification services to a biological or alleged father under section 361.5, former subdivision (b)(10)(B), which provided that services could be denied if " 'the parental rights of a parent or guardian over any sibling or half-sibling of the child had been permanently severed, and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half-sibling of that child from that parent or guardian.' " (*Francisco G.,* at pp. 595-601; see now § 361.5, subd. (b)(11).) The father contended the

_____

[7] Since the department not only concedes this basic appellate principle but cites *In re M.B., supra,* 182 Cal.App.4th at page 1506, to support it, we are puzzled why the department made its forfeiture argument in the first place.

statute did not apply to him because he was not the custodial parent of the sibling or half sibling in the prior dependency proceedings, but the court held: "[T]he term 'parent,' *as used in this bypass provision*, should be understood to refer to the father's status as a 'parent' of the child, not the sibling. In addition, *the statutory language makes no mention of the custodial status of the sibling at the time of removal, much less require previous custody of the sibling.* We decline to read such a requirement into the provision." (*Francisco G.,* at p. 599, italics added.) But the statute at issue in the present case *does* "mention . . . the custodial status of the sibling at the time of removal" and *does* "require previous custody of the sibling." (*Ibid.*)[8] And *Francisco G.*'s concerns about the status of a biological or alleged father, as reflected in the statutory language it construed, have no application to the present case.

The department also relies on this court's decision in *Mardardo F. v. Superior Court* (2008) 164 Cal.App.4th 481 (*Mardardo F.*). In *Mardardo F.*, we construed section 361.5, subdivision (b)(4), which provides that reunification services may be denied if "the parent or guardian of the child has caused the death of another child through abuse or neglect." (*Mardardo F.,* at p. 483, fn. omitted.) We found that under that provision "the parent or guardian of the child" meant only the parent or guardian of the child in the current proceeding, not of the other child. (*Id.* at pp. 487-489.) But section 361.5, subdivision (b)(4) does not refer to any prior dependency proceeding or state that the parent must have custody of the child whose death he or she caused. Thus, *Mardardo F.* is inapposite.

---

[8] *Francisco G.* does not cite *In re Terry H., supra*, 27 Cal.App.4th at page 1856 (holding that section 361.5 applies only to custodial parents). Because *Francisco G.* is inapposite, we need not decide whether it erred on this point.

The juvenile court's order denying reunification services to mother under section 361.5(b)(10) cannot stand.  We remand the matter with directions to the juvenile court to vacate its order and to enter a new order granting her services.

In light of this conclusion, we need not address the parties' other contentions.

## DISPOSITION

The matter is remanded to the juvenile court with directions to vacate its order denying reunification services to mother and to enter a new order granting her services.

      BLEASE      , Acting P. J.

We concur:

      NICHOLSON      , J.

      HULL      , J.