In November 1994, San Francisco Police Officer James Guelff was shot and killed by a heavily armed carjacking suspect who was wearing body armor. Less than three years later, in February 1997, two heavily armed bank robbers protected by body armor held off police after robbing a North Hollywood bank. During the ensuing gun battle, 11 police officers and six civilians were wounded. In response to these and other troubling incidents, in 1998 the Legislature enacted Penal Code section 12370, which, subject to exceptions not relevant here, prohibits persons who have been convicted certain violent felonies from purchasing, owning, or possessing "body armor."
Penal Code section 12370 defines "body armor" by reference to title 11, section 942, subdivision (e), of the California Code of Regulations, which states in pertinent part: "`Body armor' is popularly called a `bulletproof vest'. For purposes of these regulations, `body armor' means those parts of a complete armor that provide ballistic resistance to the penetration of the test ammunition for which a complete armor is certified." In my view, the first sentence of the statutory definition defines body armor sufficiently to give ordinary persons ample notice of what is prohibited. The second sentence provides a precise definition sufficient to prevent arbitrary enforcement of the law. The statute, therefore, is not unconstitutionally vague.
Defendant Ethan Saleem has a prior conviction for voluntary manslaughter, one of the violent felonies specified by Penal Code section 12370. In January 2007, Los Angeles Police Department officers discovered Saleem wearing a 10-pound, camouflage-patterned vest labeled "body armor." The People presented expert testimony sufficient to prove the vest provided ballistic resistance to relevant types of test ammunition. The evidence was therefore sufficient to prove Saleem knowingly possessed body armor within the meaning of the statute.
Because I discern no constitutional infirmity in Penal Code section 12370, and because I believe there was sufficient evidence to prove both that the vest constituted body armor and that Saleem knew its character, I would affirm Saleem's conviction. Accordingly, I respectfully dissent. *Page 279 
Penal Code section 12370 is not void for vagueness.
 a. Applicable principles governing statutory construction.
The majority correctly recites the facts of the case, and I do not repeat them here. Instead, I turn directly to analysis of the statutory language.
When interpreting a statute, our "`fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.'" (People v. Lewis (2008) 43 Cal.4th 415, 491
[75 Cal.Rptr.3d 588, 181 P.3d 947]; see People v. King
(2006) 38 Cal.4th 617, 622 [42 Cal.Rptr.3d 743, 133 P.3d 636];People v. Ramirez (2009) 45 Cal.4th 980, 987
[89 Cal.Rptr.3d 586, 201 P.3d 466].) "`We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]'" (People v. Lewis, supra, at p. 491.) If the statutory language is unambiguous, the plain meaning controls. (People v. King, supra, at p. 622.) If the statutory language is reasonably susceptible to more than one interpretation, we may consider various extrinsic aids, including "`"`the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.'"' [Citations.]" (Ibid.; see People v. Ramirez, supra, at p. 987; In re Derrick B. (2006) 39 Cal.4th 535, 539
[47 Cal.Rptr.3d 13, 139 P.3d 485].) We must adhere to the "fundamental rule of statutory construction that requires every part of a statute be presumed to have some effect and not be treated as meaningless unless absolutely necessary. `Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided. [Citations.]' [Citations.]" (People v. Arias (2008) 45 Cal.4th 169, 180
[85 Cal.Rptr.3d 1, 195 P.3d 103].)
A criminal statute is void for vagueness only if it fails to provide adequate notice to ordinary people of the kind of conduct prohibited, or if it authorizes arbitrary and discriminatory enforcement by "`"delegat[ing] basic policy matters to policemen, judges, and juries for resolution on anad hoc and subjective basis."'" (People v.Rubalcava (2000) 23 Cal.4th 322, 332 [96 Cal.Rptr.2d 735,1 P.3d 52]; see Kolender v. Lawson (1983) 461 U.S. 352,357 [75 L.Ed.2d 903, 103 S.Ct. 1855]; People v. Misa
(2006) 140 Cal.App.4th 837, 844 [44 Cal.Rptr.3d 805].) "To satisfy constitutional mandates, a statute must: (I) be sufficiently definite to provide adequate notice of the conduct that is proscribed; and (2) provide sufficiently definite guidelines for the police so as to prevent arbitrary or discriminatory enforcement." (People v. Misa, supra, at p. 844; see Tobe v. City of Santa Ana (1995)9 Cal.4th 1069, 1106-1107 [40 Cal.Rptr.2d 402, 892 P.2d 1145]; Peoplev. Heitzman (1994) 9 Cal.4th 189, 199-200
[37 Cal.Rptr.2d 236, 886 P.2d 1229]; Burg v. Municipal Court (1983)35 Cal.3d 257, 269 [198 Cal.Rptr. 145, 673 P.2d 732]; People v.Tapia (2005) *Page 280 129 Cal.App.4th 1153, 1166 [29 Cal.Rptr.3d 158].) "`"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." [Citation.]' [Citations.]" (People v. Tapia, supra, at p. 1166.) Only a reasonable degree of certainty is required. (Tobe v. City of Santa Ana,supra, at p. 1107; People v. Misa, supra, at p. 844.)
There is a "`strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute . . . cannot be held void for uncertainty if any reasonable and practical construction can be given to its language,"'" or if its terms may be made reasonably certain by reference to other definable sources. (People v. Morgan
(2007) 42 Cal.4th 593, 605-606 [67 Cal.Rptr.3d 753,170 P.3d 129]; see People v. Maciel (2003) 113 Cal.App.4th 679,684 [6 Cal.Rptr.3d 628]; People v. Tapia, supra,129 Cal.App.4th at p. 1167; People v. Sullivan (2007)151 Cal.App.4th 524, 543 [59 Cal.Rptr.3d 876].) It has long been the law that "`[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers.' [Citations.]" (People v. Superior Court(Romero) (1996) 13 Cal.4th 497, 509 [53 Cal.Rptr.2d 789,917 P.2d 628]; see Miller v. Municipal Court (1943)22 Cal.2d 818, 828 [142 P.2d 297]; Taxpayers for ImprovingPublic Safety v. Schwarzenegger (2009) 172 Cal.App.4th 749,769-770 [91 Cal.Rptr.3d 370].)
Penal Code section 12370, subdivision (a) provides: "Any person who has been convicted of a violent felony, as defined in subdivision (c) of Section 667.5, under the laws of the United States, the State of California, or any other state, government, or country, who purchases, owns, or possesses body armor, as defined by Section 942 of title 11 of the California Code of Regulations, except as authorized under subdivision (b), is guilty of a felony, punishable by imprisonment in a state prison for 16 months, or two or three years."[1] As notedante, California Code of Regulations, title11, section 942, subdivision (e) provides in pertinent part: "`Body armor' is popularly called a `bulletproof vest'. For purposes of these regulations, `body armor' means *Page 281 
those parts of a complete armor that provide ballistic resistance to the penetration of the test ammunition for which a complete armor is certified."[2] The relevant portion of the statutory definition is therefore comprised of two component sentences, both of which must be given effect. (SeePeople v. Arias, supra, 45 Cal.4th at p. 180.) As the majority correctly describes, the regulation is embedded in a portion of title 11 that sets forth minimum standards and detailed testing procedures for body armor suitable for purchase for California peace officers. (Cal. Code Regs., tit. 11, §§ 941-957.)
 b. The precise definition of body armor contained in California Code of Regulations, title JJ, section 942, subdivision (e) requires that the People prove the garment will withstand penetration by specified test ammunition, and prevents arbitrary enforcement of the law.
I turn first to analysis of the second sentence of the definition, i.e., "`body armor' means those parts of a complete armor that provide ballistic resistance to the penetration of the test ammunition for which a complete armor is certified." Parsing this language, it is apparent that for purposes of the statute, body armor is (1) a part of an armor (2) that provides ballistic resistance to the penetration of (3) test ammunition. The phrase, "for which a complete armor is certified" modifies "test ammunition." (See Anthony J. v. Superior Court
(2005) 132 Cal.App.4th 419, 425-426 [33 Cal.Rptr.3d 677] ["`"A longstanding rule of statutory construction — the `last antecedent rule' — provides that `qualifying words, phrases and clauses are to be applied to the words or phrases immediately preceding and are not to be construed as extending to or including others more remote'"'"].) "Ballistic" means "relating to . . . a body in motion according to the laws of ballistics," i.e., the science of the motion of projectiles in flight. (Merriam-Webster's Collegiate Diet. (10th ed. 1996) p. 88, col. 1.) "Resistance" means "an opposing or retarding force." (Merriam-Webster's Collegiate Diet., supra, p. 996, col. 2.) Thus, "ballistic resistance" simply means opposition to, and protection from, the specified test ammunition. (See Cal. Code Regs., tit. 11, § 945, subd. (e) [body armor shall protect "against the standard test rounds specified" by the regulations].) Penetration is defined in title 11, section 942, subdivision (j) as "complete perforation of an armor test sample by a test bullet or bullet fragment, or fragments of the armor evidenced by the presence of the bullet or fragment in the backing material, or by a hole that passes through a ballistic panel or vest." (See also Cal. Code Regs., tit. 11, § 945, subd. (f) [body armor "shall protect against penetration"].) Viewing the regulations as *Page 282 
a whole (People v. Cole (2006) 38 Cal.4th 964, 975
[44 Cal.Rptr.3d 261, 135 P.3d 669]), and by reference to the plain meaning of the words used, to obtain a conviction under Penal Code section 12370 the People must prove the garment provides ballistic resistance to penetration, i.e., complete perforation, from the types of ammunition specified in the regulations as the test ammunition for one or more armor types.
I therefore agree with the majority's conclusion that certification is not an element of a Penal Code section 12370
violation. As the majority correctly reasons, neither the legislative history, the plain language of the statute, norPeople v. Chapple (2006) 138 Cal.App.4th 540
[41 Cal.Rptr.3d 680], establishes that certification is an element. (Maj. opn., ante, at p. 265.) Indeed, interpreting the phrase "body armor" to mean only an armor that has undergone the testing process set forth in title 11, division 1, chapter 11, and has been certified, makes little sense in the context of the chapter as a whole. California Code of Regulations, title11, section 942 provides 12 definitions of terms as they are used in title 11, division 1, chapter II, article 1. The portion of the regulations at issue addresses the procedures and specifications for testing body armor in order to obtain state Department of Justice certification. Therefore, it would make little sense for section 942 to define body armor as armor friarhas already been certified.
I part company with the majority, however, when it states that the statute proscribes only body armor that is "equivalent to, or better than, body armor that is certified for sale to law enforcement." (Maj. opn., ante, at p. 264.) Title 11 of the California Code of Regulations includes a variety of requirements for police-approved body armor, including specifications as to, inter alia, configuration, labeling, and workmanship, as well as detailed testing procedures. (Cal. Code Regs., tit. 11, § 945 et seq.) In my view, to establish a violation of Penal Code section 12370, the People need not prove a garment could pass the detailed testing regimen set forth in the regulations, nor must the garment meet the specifications regarding configuration, labeling, and workmanship. Instead, for the reasons I have explained, the plain language of the regulation requires only that the People prove the garment could prevent penetration from the types of ammunition specified in the regulations for one or more armor types.
This precise definition of body armor contained in the second definitional sentence of California Code of Regulations, title 11, section 942 provides sufficiently definite guidelines for police and prosecutors, so as to prevent arbitrary or discriminatory enforcement. (See Kolender v. Lawson,supra, 461 U.S. at pp. 357-358.) The statute gives little discretion regarding what constitutes proscribed body armor and prevents the expansion of the class of prohibited items beyond that contemplated by the Legislature. Only garments *Page 283 
that protect against penetration from the test ammunition fall within the statutory ambit. Thus, the second sentence of the definition protects against arbitrary enforcement by overzealous police or prosecutors who might take an overbroad view of which items could be categorized as body armor. "[T]he very precision of the standard assures the statute's validity in this respect." (Burg v. Municipal Court, supra, 35 Cal.3d at p. 270.)
 c. California Code of Regulations, title 11, section 942 provides adequate notice of what conduct is prohibited.
My primary disagreement with the majority regards its treatment of the knowledge element, which is the basis for its conclusion that the statute is unconstitutionally void for vagueness. The majority holds that, due to the precise, technical definition of body armor contained in the second definitional sentence, only a subset of body armor is prohibited by the statute, i.e., only armor that is equivalent to or better than that certified for purchase by the State of California for peace officers. (Maj. opn., ante, at p. 264.) Thus, in the majority's view, the statute leaves violent felons perfectly free to purchase, wear, and possess other body armor that could not meet California's rigorous testing regime.
The majority further holds that, because only an expert can determine whether a garment meets the detailed technical specifications contained in California Code of Regulations, title 11, a violent felon, as a lay person, has no way to discern whether his or her body armor is equal to or better than California-certified armor, and is of the proscribed variety. Thus, the majority reasons, the statute fails to provide fair notice of "which protective body vests constitute the body armor made illegal by the statute" and of "the characteristics making [a] body vest illegal." (Maj. opn., ante, at pp. 258, 269-270.)
I respectfully disagree with this analysis. First, nothing in the history of Assembly Bill No. 1707 (1997-1998 Reg. Sess.), the legislation that enacted Penal Code section 12370, remotely suggests that the Legislature intended to create two categories of body armor, one permissible for violent felons to possess, the other not. Committee analyses clarify that according to the bill's author, the legislation "`was introduced to help stem the tide of recent criminal incidents which create a dangerously threatening environment for both police officers and citizens.'" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1707 (1997-1998 Reg. Sess.) as amended Mar. 19, 1998, pp. 3-4-; see Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1707 (1997-1998 Reg. Sess.) as amended Mar. 19, 1998, p. 1.) Legislative analyses of the bill explain: "`Body armor or bulletproof vests originated in the early 1970's and [were] designed to be worn by peace officers to provide protection. Since 1973, there have been nearly 3,000 incidents where peace *Page 284 
officers['] lives were saved as a direct result of wearing body armor. Body armor was created with one purpose in mind — to protect the individuals that risk their lives protecting us.'" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1707, supra, at p. 3; see also Sen. Rules Com., Analysis of Assem. Bill No. 1707 (1997-1998 Reg. Sess.) as amended June 29, 1998, p. 2.) The bill's author recounted several troubling incidents in which criminals wore body armor, thwarting the ability of peace officers to apprehend them. "`Recent reports include a dangerous criminal, who in November of 1994, was able to fend off 120 armed police officers for 32 minutes. The gunman, protected by full body armor, killed a San Francisco police officer. Three years later, a bank robbery in North Hollywood led [to] a one-hour confrontation between two criminals shielded by full body armor and 350 police officers. The encounter resulted in two deaths and injuries to more than ten other persons. Graphic videotape of the incident showed the police officers' bullets literally bouncing off of the armored gunmen, delaying apprehension of the dangerous criminals. [¶] Another incident in Los Angeles involved two gang members stopped by police for a traffic violation who were found to be wearing bulletproof body armor. Both suspects had been convicted of past violent felonies and gun violations.'" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1707,supra, at p. 4; see also Sen. Rules Com., Analysis of Assem. Bill No. 1707, supra, at p. 2; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1707, supra, at p. 1.) According to the bill's author, "`[w]henever these frightening and often lethal confrontations occur, the lives of innocent citizens and police officers are unnecessarily placed in jeopardy. This legislation will assist law enforcement personnel to prevent and mitigate situations similar to the North Hollywood incident.'"[3] (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1707, supra, at p. 4; see also Sen. Rules Com., Analysis of Assem. Bill No. 1707,supra, at p. 2; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1707, supra, at p. 1.) The act was denominated "the James Guelff Body Armor Act of 1998" (Stats. 1998, ch. 297, § 1), in honor of the slain San Francisco police officer.
The clear legislative intent behind Penal Code section 12370 was to stop the threat of violent felons who are able to thwart police officers by wearing body armor, potentially injuring or killing innocent officers or civilians in the process. The use of body armor by persons to resist police is still a genuine and pressing concern. (See Romero, A Brief History of BodyArmor (Apr. 7, 2009) Time.comhttp://www.time.com/time/busines/article/0,8599,1889795,00.html
[as of Dec. 17, 2009] [referencing an Apr. 3, 2009 shooting at an immigration *Page 285 
center in New York in which 13 people were killed, and an Apr. 4, 2009 killing of three Pennsylvania police officers, both carried out by men wearing body armor, as the "latest examples of what investigators have begun calling `pseudo commandos' — criminals who prepare for a showdown with law enforcement by strapping on bullet-resistant vests before battle"].) The bill's history indicates to me that the Legislature aimed to prohibit possession of any body armor by violent felons, whether homemade, equivalent to peace officer body armor, or of a lesser quality. 1 cannot conceive of a reason why the Legislature would have wished to decriminalize possession of certain types of body armor by violent felons. Section 12370 does not address a situation in which the Legislature could have been concerned about criminalizing only certain categories of an item, while leaving other categories available for legitimate uses. (Sec, e.g., In re JorgeM. (2000) 23 Cal.4th 866, 874-875, 878 [98 Cal.Rptr.2d 466,4 P.3d 297] [discussing Roberti-Roos Assault Weapons Control Act of 1989 (Pen. Code, § 12275 et seq.)].) Instead, section 12370 prohibits, not a class of items, but a class ofpersons — violent felons — from possessing a particular item that is dangerous in their hands.
Further, subdivision (b) of Penal Code section 12370 provides that the police chief or sheriff in the applicable jurisdiction may grant an exception to the statute's prohibition when the ex-felon's employment, livelihood, or safety depends upon his or her ability to legally possess and use body armor. This provision, while not dispositive, suggests the Legislature did not intend to create a category of body armor which violent felons are lawfully permitted to possess. Had the law been intended to allow violent felons lawful access to a subcategory of body armor, arguably there would have been no need for the statutory exception.
Under these circumstances, and in line with our mandate to "give the statute a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or absurdity" (Anthony J. v. Superior Court, supra,132 Cal.App.4th at p. 425), I do not believe the majority's concern that felons will be unable to distinguish between permissible and impermissible body armor is warranted. Certainly, if a violent felon is prosecuted for possession of body armor, and the People are unable to prove his or her vest could withstand penetration by the relevant test ammunition, the second definitional sentence of California Code of Regulations, title11, section 942 will preclude a conviction. As I have explained, the precise definition of body armor in section 942, subdivision (e) serves to prevent arbitrary enforcement. A by-product of this requirement may well be that some violent felons who possess body armor will escape conviction. In my view, however, this reflects a legislative desire to avoid arbitrary enforcement, not an intent to decriminalize possession of a subcategory of body armor. *Page 286 
Second, I see no reason to assume that the Legislature intended that a defendant's knowledge of the technical specifications of his or her body armor be an element of Penal Code section 12370. As the majority correctly notes, section 12370 does not expressly contain a knowledge element. (Maj. opn.,ante, at p. 266.) The rule that no crime is committed absent the union of act and either wrongful intent or criminal negligence is fundamental, and penal statutes are often construed to contain such a knowledge element even where one is not expressly included. (People v. King, supra,38 Cal.4th at pp. 622-623; Pen. Code, § 20; In reJennings (2004) 34 Cal.4th 254, 267 [17 Cal.Rptr.3d 645,95 P.3d 906]; In re Jorge M., supra, 23 Cal.4th at p. 872;People v. Coria (1999) 21 Cal.4th 868, 876
[89 Cal.Rptr.2d 650, 985 P.2d 970]; People v. Taylor (2001)93 Cal.App.4th 933, 938-939 [114 Cal.Rptr.2d 23].) I also concur that section 12370 is not a public welfare offense. It is a felony, carries a significant penalty, is not comparable to a traffic or regulatory offense, and a conviction is not free from moral obloquy. (See In re Jorge M., supra, at pp. 879-880; People v. Coria, supra, at p. 877; Peoplev. King, supra, 38 Cal.4th at p. 623.) Thus, as with other statutes barring possession of dangerous items, a knowledge element must be read into section 12370. (See, e.g., Peoplev. King, supra, 38 Cal.4th at pp. 627-628 [short barreled rifle]; In re Jorge M., supra, at p. 887 [unregistered assault weapon]; People v. Rubalcava, supra,23 Cal.4th at pp. 331-332 [concealed dirk or dagger]; People v. Coria,supra, at p. 880 [manufacturing methamphetamine];People v. Taylor, supra, at p. 941 [cane sword];People v Westlund (2001) 87 Cal.App.4th 652, 658
[104 Cal.Rptr.2d 712] [firearm silencer]; People v. Snyder
(1982) 32 Cal.3d 590, 592 [186 Cal.Rptr. 485, 652 P.2d 42].)
Crimes involving possession of contraband typically require proof of two types of knowledge. First, the defendant must know that he or she possesses the prohibited item. (See, e.g.,People v. Rubalcava, supra, 23 Cal.4th at p. 332;In re Jorge M., supra, 23 Cal.4th at p. 885; Peoplev. Jeffers (1996) 41 Cal.App.4th 917, 922
[49 Cal.Rptr.2d 86].) For purposes of Penal Code section 12370, the defendant must know that he or she possesses, purchased, or owns the body armor. (Pen. Code, § 12370, subd. (a).) If, for example, a bulletproof vest was surreptitiously placed in the defendant's backpack by a third person, without the defendant's knowledge, the defendant would lack the necessary mens rea. (See Peoplev. Rubalcava, supra, at p. 332 fn. 6.)
The defendant must also know, or reasonably should have known, the character of the thing possessed. (See, e.g., In reJorge M., supra, 23 Cal.4th at p. 887; People v.Westlund, supra, 87 Cal.App.4th at p. 657; People v.King, supra, 38 Cal.4th at p. 627 [in a prosecution for possession of a short-barreled rifle, the prosecution must establish that the defendant knew the rifle was short];People v. Coria, supra, 21 Cal.4th at pp. 874-875, 880
[in a prosecution for possession or manufacture of a controlled substance, knowledge of the character of the substance is an essential element of the crime]; *Page 287 People v. Rubalcava, supra, 23 Cal.4th at p. 332 [in a prosecution for carrying a concealed dirk or dagger, a defendant must know the weapon can be used as a stabbing weapon];People v. Snyder, supra, 32 Cal.3d at p. 593 [in a prosecution for violation of Pen. Code, § 12021, felon in possession of a firearm, "the crucial question is whether the defendant was aware that he was engaging in the conduct proscribed by that section"]; People v. Montero (2007)155 Cal.App.4th 1170, 1176 [66 Cal.Rptr.3d 668] [to be found guilty of possession of a controlled substance, defendant must know the character of the substance possessed].) Here, that means that an element of a prosecution under Penal Code section 12370 is that the defendant knew, or reasonably should have known, the character of the garment in question. (See In reJorge M., supra, 23 Cal.4th at p. 887.) The "reasonablyshould have known" formulation is appropriate due to the public safety threat addressed by the statute, the number of prosecutions to be expected under it, and the difficulty of routinely proving actual knowledge by defendants. (Ibid.)
It does not necessarily follow, however, that the defendant must fully understand the technical specifications of his or her body armor. It is enough that a violent felon knows he or she possesses a bulletproof vest or body armor, as those terms are popularly understood, in line with the first definitional sentence of California Code of Regulations, title11, section 942. I reach this conclusion for several reasons. First, the "`[f]air notice'" component of a void-for-vagueness inquiry "requires only that a violation be described with a `"reasonable degree of certainty"`" such that ordinary people can understand what conduct is prohibited. (Burg v. Municipal Court,supra, 35 Cal.3d at pp. 270-271.) The notice provided must be such that prosecution "does not `trap the innocent' without `fair warning.' [Citation.]" (Id. at p. 271.) Here, that standard is certainly met. Penal Code section 12370 clearly defines the class of persons covered by the statute: individuals who have been convicted of specified violent felonies. The first sentence in section 942 clearly, simply, and in plain language describes what is prohibited: bulletproof vests. The generally understood meaning of "bulletproof is "impenetrable to bullets." (Webster's 3d New Internat. Diet. (1966) p. 294, col. 1.) "Bulletproof vest" is a commonly used term that would be readily understood by an ordinary person to refer to a garment that is intended to provide protection from gunfire. "`"The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." [Citation.]'" (People v.Sullivan, supra, 151 Cal.App.4th at p. 543.) The terms of a statute are not impermissibly vague "`if their meaning can be objectively ascertained by reference to common experiences of mankind.'" (Id. at p. 544.) Such is the case here: an ordinary person, reading the plain statutory language prohibiting possession of "body armor," "popularly called a `bulletproof vest,'" could hardly be surprised to be prosecuted for possession of a *Page 288 
10-pound, camouflage-patterned vest like Saleem's, which bore a label stating it was "body armor." Because a reasonable and practical construction can be given to the term "bulletproof vest" in section 942, coupled with the term "body armor" in Penal Code section 12370, an ordinary person would necessarily be on notice of what conduct the statute proscribes.
Further, we must "give the statute a reasonable and commonsense interpretation consistent with the apparent purpose and intent of the lawmakers and resulting in wise policy rather than mischief or absurdity." (Anthony J. v. Superior Court,supra, 132 Cal.App.4th at p. 425; see also Smith v.Superior Court (2006) 39 Cal.4th 77, 83
[45 Cal.Rptr.3d 394, 137 P.3d 218]; People v. Ross (2008)162 Cal.App.4th 1184, 1189 [76 Cal.Rptr.3d 477] [statute should not be interpreted in such a way as to defeat the legislative intent].) Surely, the Legislature did not intend to require the People to prove the defendant's knowledge of the technical specifications of the garment; such a requirement would impair effective enforcement of the statute. (See In re Jorge M.,supra, 23 Cal.4th at pp. 884-885.) It would be a rare case in which the People could prove the violent felon's knowledge of the technical aspects of his or her body armor. Presumably, the Legislature did not intend to exempt persons convicted of violent felonies from the statute's purview merely because they failed to acquaint themselves with the garment's salient characteristics. (See In re Jorge M., supra, at p. 888.) As explained in regard to a similar issue inKing: "To require the prosecution to prove that a defendant knows the precise length of a rifle prohibited by [Penal Code] section 12020(a) would make convictions for possessing such weapons virtually impossible to obtain, because few criminals would take the time to measure their rifles." (People v. King, supra, 38 Cal.4th at p. 628.) Imposing a requirement that the defendant have knowledge not only that the garment is a bulletproof vest, as that item is popularly known, but also of the garment's technical specifications, would likely render the statute nugatory. That clearly was not the Legislature's intent in enacting Penal Code section 12370.
One of the primary reasons for imposing a knowledge requirement is to avoid punishing innocent possession. For example, inPeople v. Coria, supra, 21 Cal.4th 868, our Supreme Court concluded that the crime of manufacturing methamphetamine requires that the defendant know the character of the substance being manufactured. (Id. at p. 871.) Coria
explained that not all acts of chemical synthesis are illegal. (Id. at p. 880.) The court found it reasonably likely that the manufacturers of illicit drugs might employ naive, unskilled helpers to assist in the manufacturing process. Therefore, requiring knowledge of the character of the substance would benefit innocent employees. (Id. at p. 881.) Similarly, King reasoned that many of the weapons prohibited by Penal Code section 12020, such as cane guns, belt buckle knives, baseball bats, and the like, "have an obvious lawful, utilitarian purpose, but because they are also disguised weapons, their possession is *Page 289 
illegal. . . . It is highly unlikely that the Legislature intended that a person possessing an item listed in [Penal Code] section 12020(a)(1) for its lawful, utilitarian purpose, but unaware of the characteristic that makes possession of the item illegal, would nevertheless be guilty of violating section 12020(a)(1). An example would be a person who borrows a cane for the legitimate purpose of using it as an aid in walking, unaware that a gun is hidden inside it. . . ." (People v. King,supra, 38 Cal.4th at p. 626, fn. omitted; accord,People v. Taylor, supra, 93 Cal.App.4th at p. 941 ["In order to protect against the significant possibility of punishing innocent possession by one who believes he or she simply has an ordinary cane, we infer the Legislature intended a scienter requirement of actual knowledge that the cane conceals a sword."].)
In the case of Penal Code section 12370, the goal of avoiding the punishment of innocent possessors is fully met by requiring proof that the defendant knew, or reasonably should have known, the garment in question was a bulletproof vest, as that phrase is generally understood. A bulletproof vest is a readily recognizable item, not easily mistaken for a regular vest or shirt. Unlike cane swords, chemical substances, and the like, the character of body armor is ordinarily obvious. Should technology progress to the point where body armor becomes difficult to distinguish from regular clothing, the knowledge requirement I have articulated would protect against the punishment of innocent possession. If, for example, the garment's appearance and attributes, and the defendant's manner of obtaining possession, did not reasonably suggest the garment was body armor, and no other evidence demonstrated knowledge, the requisite mens rea would be absent. (See In re Jorge M.,supra, 23 Cal.4th at p. 886.)
This case finds a helpful parallel in Burg v. MunicipalCourt, supra, 35 Cal.3d 257. There the defendant was charged with violating Vehicle Code section 23152, subdivision (b), which prohibited driving with a blood-alcohol content of 0.10 percent or more. (Burg, at pp. 261, 264.) He contended the statute was void for vagueness because it failed to give adequate notice of the conduct it prohibited. (Id. at pp. 261, 268-271.) In particular, he urged that the statute was invalid because it was "impossible for ordinary persons actually to know when their blood alcohol reaches the proscribed point." (Id. at p. 270.)
Burg first concluded that the 0.10 percent blood-alcohol standard "could not be more precise as a standard for law enforcement," and thus assured the law would not be enforced arbitrarily. (Burg v. Municipal Court, supra,35 Cal.3d at p. 270.) The court likewise rejected the defendant's argument that the statute failed to give fair notice of what conduct was prohibited. The court observed, "the real thrust of defendant's argument is that the statute is in *Page 290 
effect `void for preciseness.' His complaint is not that the language of the statute is vague or ambiguous, but that it is too exact. His novel theory is that the statute fails to notify potential violators of the condition it proscribes, because it is impossible for a person to determine by means of his senses whether his blood-alcohol level is a `legal' 0.09 percent or an `illegal' 0.10 percent." (Ibid.) Burg concluded that while this observation was true, it did not affect the statute's constitutionality. "Defendant's theory would render the void-for-vagueness doctrine internally inconsistent: the notice requirement would compete with the need to provide precise standards for law enforcement. When . . . a statutory standard requires scientific measurement, the very factor that assures due process under the `standards' component would violate due process under the `notice' component." (Ibid.) The "very fact that he has consumed a quantity of alcohol should notify a person of ordinary intelligence that he is in jeopardy of violating the statute." (Burg, at p. 271.) The court expressed skepticism that any person driving a vehicle after drinking would be "unaware of the possibility that his [or her] blood-alcohol level might equal or exceed the statutory standard." (Ibid.)
People v. King, supra, 38 Cal.4th 617, is also instructive. There, the defendant was charged with possession of a "short-barreled rifle." (Id. at p. 620.)King concluded that, although the prosecution was required to prove the defendant knew the rifle was short, it "need not prove the defendant's knowledge of the rifle's precise length." (Id. at p. 627.) The court reasoned that a "person possessing a short-barreled rifle, and having actually observed the weapon, necessarily knows of its shortness, and thus knows its illegal characteristic, whether or not the person knows how many inches long the weapon is." (Id. at pp. 627-628.)
As in Burg, Saleem's untenable argument is that the statute is too precise. As stated ante, the second definitional sentence of California Code of Regulations, title 11, section 942 contains a technical standard that serves to prevent arbitrary application of the law. The fact the statutory standard requires technical measurement and testing cannot undermine the "`fair notice'" component of the vagueness inquiry. (Burg v. Municipal Court, supra,35 Cal.3d at p. 270.) Were the statute to employ a less precise definition of "body armor," defendants would likely contend it failed to provide concrete standards to avoid arbitrary enforcement. (See, e.g., Haggard v. State (Ind.Ct.App. 2002)771 N.E.2d 668, 673-674 [defendant unsuccessfully contended nontechnical definition of "body armor" was void for vagueness]; U.S. v.Marler (N.D. Ohio 2005) 402 F.Supp.2d 852, 855-856 [same].) The two-sentence definition in section 942, however, avoids this problem by including both a technical, scientific definition and a common-sense, plain meaning definition readily accessible to a layperson. Further, analogous to Burg, the very fact a violent felon possesses an item that, for all practical purposes, appears to be a bulletproof vest, should notify the felon *Page 291 
that he or she is in danger of violating the statute. (SeeBurg v. Municipal Court, supra, at p. 271.) As with the short-barreled shotgun at issue in King, most, if not all, bulletproof vests are readily identifiable as such by one who observes or handles them.
I make one additional observation. Even if it were correct that a violent felon must know his body armor's technical specifications in order to have the requisite knowledge, it does not follow that Penal Code section 12370 is void for vagueness. The majority reasons that only an expert would know if a particular garment is proscribed by section 12370 (People v.Chapple, supra, 138 Cal.App.4th at p. 548); thus, a person of ordinary intelligence would have no reasonable way to discern whether a garment meets the technical requirements of California Code of Regulations, title 11. (Maj. opn., ante, at pp. 273-274.) I disagree. A defendant could purchase body armor from a seller who provides assurances that the garment has been certified for use by California peace officers, or meets the standards outlined in title 11. Certainly a felon who steals a body vest from a California peace officer or police cruiser could assume the garment meets the technical requirements of title 11. (See U.S. v. Marler, supra,402 F.Supp.2d at pp. 853, 855-856.) A garment could bear labeling, or come with informational materials, stating that it meets the requirements for use by California peace officers or withstands penetration by particular types of ammunition. Under any of these scenarios, a defendant could rather easily possess the knowledge that his or her body armor meets California Code of Regulations, title 11's technical specifications. Indeed, a quick perusal of the numerous Internet sites which offer body armor for sale, including the online auction house eBay, reveals that much technical information is readily available to purchasers, including such things as the garment's National Institute of Justice level, the type of threats against which it will protect, and the police or military agencies that purportedly use it as standard equipment. Therefore at least some
defendants could readily discern whether their body armor meets the technical requirements set forth in the regulations. How frequently such circumstances would occur, and whether the People would often, or ever, be able to prove them, is questionable. But the fact the People's burden would be difficult does not mean the statute is void; instead it means the statute would not be very effective. "`[A] party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague in all of itsapplications." . . . [Citations.]'" (People v. Morgan,supra, 42 Cal.4th at pp. 605-606.)
d. Sufficiency of the evidence.
Applying the foregoing principles here, I conclude the evidence was sufficient to prove Saleem's vest constituted body armor and that he knew, or *Page 292 
reasonably should have known, it was prohibited body armor. When determining whether the evidence was sufficient to sustain a criminal conviction, "we review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (People v. Snow
(2003) 30 Cal.4th 43, 66 [132 Cal.Rptr.2d 271, 65 P.3d 749]; seePeople v. Halvorsen (2007) 42 Cal.4th 379, 419
[64 Cal.Rptr.3d 721, 165 P.3d 512].) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (People v. Medina
(2009) 46 Cal.4th 913, 919 [95 Cal.Rptr.3d 202, 209 P.3d 105].)
As the majority correctly concludes, the evidence was sufficient to show Saleem's vest constituted body armor. (Maj. opn.ante, at p. 263.) The People were required to prove Saleem's vest would prevent complete penetration with the type of test ammunition specified for one or more types of armor. (Cal. Code Regs., tit. 11, § 942.) The regulations specify that Type I armor is to be tested with .38 special and .22 long rifle high velocity ammunition. (Cal. Code Regs., tit.11, § 946, subd. (b)(1)(A), (B); see id., § 951 ["The front and rear ballistic panels of each armor type shall be tested with the type of ammunition specified in Section 946(b) for each armor type."].) Here, Officer Richard Kehr, who qualified as an expert in body armor, testified that he had examined Saleem's vest, including its weight, rigidity, and interior composition. Based on his examination, he believed the vest would stop certain rounds "without a problem," and would provide ballistic resistance to .22-caliber long rifle high velocity bullets and .38 special bullets. Further, Kehr testified that the vest would provide ballistic resistance to certain .357 Magnum and nine-millimeter bullets, the test rounds specified for Type IIA armor. The evidence was therefore sufficient to prove the vest was prohibited body armor within the meaning of Penal Code section 12370.
Likewise, the evidence was sufficient to show Saleem knew, or reasonably should have known, his vest was a bulletproof vest prohibited by the statute. As the majority agrees, there is no doubt Saleem knew he possessed a body vest: he was wearing it. (Maj. opn. ante, at p. 276.) The vest weighed 10 pounds, certainly an unusual attribute for a regular garment. Officer Jeffrey Rivera testified that he immediately recognized the vest as similar to those worn in the military, demonstrating that the vest was easily recognizable as body armor. The vest was expressly labeled "body armor." It bore a patch stating it was "[b]ody armor, fragmentation protection vest for ground troops." (Italics added.) A pamphlet behind the patch was entitled, "`The use and care of body armor
fragmentation protective vest, ground troops.'" (Italics added.) Additionally, the jury could infer consciousness of guilt in Saleem's attempt to walk from the scene after he exited the Honda. (See *Page 293 
generally People v. Tripp (2007) 151 Cal.App.4th 951,956 [60 Cal.Rptr.3d 534].) In my view, this circumstantial evidence was sufficient to prove Saleem knew his vest was a prohibited bulletproof vest.
The majority expresses concern that, based on the pamphlet found with the vest, Saleem would not have known it was capable of stopping bullets. The majority reasons that Saleem could not have known a military flak jacket designed to protect against shrapnel would protect against handgun ammunition, especially since the pamphlet stated the vest did not protect against small arms fire. Although the expert explained that in military parlance, small arms fire refers to machine guns and rifles, not handguns, the majority worries that Saleem, as a layperson, could not have known this. (Maj. opn., ante, at pp. 276-277.) I readily agree that this evidence, which was before the jury, could have led to an acquittal. The jury was instructed that, to convict, it must find Saleem "knew that he possessed BODY ARMOR." If the jury concluded that Saleem actually believed his vest was only a flak jacket that provided no protection from gunfire, the knowledge element would have been unmet, and acquittal would have been the result. In my view, this case is no different than any other in which the People and the defendant present conflicting evidence: resolution of such conflicts is for the jury, not this court. Evidence is not deemed insufficient merely because contrary evidence was also presented. Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. (People v. Young (2005)34 Cal.4th 1149, 1181 [24 Cal.Rptr.3d 112, 105 P.3d 487].) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" (People v. Maury
(2003) 30 Cal.4th 342, 403 [133 Cal.Rptr.2d 561, 68 P.3d)]; seePeople v. Young, supra, at p. 1181.)
e. Conclusion.
In sum, in my view, to prove a violation of Penal Code section 12370, the People must prove, generally via expert testimony, that the garment in question provides ballistic resistance to penetration from the types of ammunition specified in the regulations as the test ammunition for one or more types of armor. The People must further prove, by direct or circumstantial evidence, that the defendant knew he or she possessed, owned, or purchased the garment, and knew, or reasonably should have known, that the garment was body armor or a bulletproof vest as those terms are popularly understood. (SeePeople v. King, supra, 38 Cal.4th at p. 627.) The People need not prove the defendant knew the technical specifications of the garment, or that it was *Page 294 
equivalent to the body armor certified for use by California peace officers. As a practical, commonsense matter, an ordinary person would understand, after reading Penal Code section 12370
and California Code of Regulations, title 11, section 942, what the statute prohibits. If a violent felon chooses to possess an item that appears to be body armor, and the People prove that the garment actually is body armor, i.e., withstands penetration by the relevant test ammunition, then there is no reason why the conviction should not stand. Mindful of our duty to uphold the constitutionality of a penal statute where possible (Peoplev. Superior Court (Romero), supra, 13 Cal.4th at p. 509), 1 decline to frustrate the Legislature's purpose in enacting Penal Code section 12370. Accordingly, I would find the statute constitutional and affirm Saleem's conviction.
[1] Subdivision (b) of Penal Code section 12370 allows the police chief or sheriff in the applicable jurisdiction to grant an exception to the statute's prohibition when the ex-felon's employment, livelihood, or safety depends upon his or her ability to legally possess and use body armor.
[2] California Code of Regulations, title 11, section 942, subdivision (e), also states: "In certain models, the body armor consists of ballistic panels without a carrier. Other models have a carrier from which the ballistic panels may be removed for cleaning or replacement." These aspects of the definition are not directly relevant to the issues presented on appeal.
[3] Where the statements of a bill's author appear to be part of the legislative debate and were communicated to other legislators, as was the case here, we may regard them as evidence of the legislative intent. (Carter v. CaliforniaDept. of Veterans Affairs (2006) 38 Cal.4th 914, 928
[44 Cal.Rptr.3d 223. 135 P.3d 637].) *Page 295