Filed 9/21/16  In re A.M. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E065394 |
| Plaintiff and Respondent, | (Super.Ct.No. J263457) |
| v. | OPINION |
| H.L. et al., | |
| Defendants and Respondents; | |
| A.M., | |
| Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Appellant.

1

Jean-Rene Basle, County Counsel, and Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Respondent, H.L.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Respondent, A.M.

A.M., a dependent child, appeals from the juvenile court's dispositional order directing family reunification services to her father (Antonio). The juvenile court denied services to A.M.'s mother based on Welfare and Institutions Code section 361.5, subdivisions (b)(6) and (7).[1] A.M. contends the court erred when it refused to also deny Antonio services pursuant to section 361.5, subdivision (b)(6). We conclude the court did not err and affirm the order.

# I

## FACTUAL BACKGROUND

A. *Prior Removal of Half Siblings and Denial of Services to Mother*

Mother has five children. The older four children were the subject of a prior dependency proceeding in which mother was denied reunification services with adoption as the long term plan. Antonio is not the father of the four older children. The fifth child is Appellant, A.M., and her presumed father is Respondent, Antonio. Mother and Antonio have known each other since February 2014, when Mother was pregnant with

---

[1] Unlabeled statutory citations refer to the Welfare and Institutions Code.

2

her fourth child. Mother and Antonio have been living together since February 2015. A.M. was born in December 2015.

The prior petitions relating to mother's four older children were filed on April 16, 2015. The petitions allege the two year old (J.P.) and the 13 month old (R.L.) suffered non-accidental serious physical harm inflicted by the child's parent or guardian. (§ 300, subd. (a).) The injuries to the children included a fractured collarbone, bruising to the forehead, nose and right jaw of one child, and fractures to both forearms of the other. The petitions also included allegations of failure to protect (§ 300, subd. (b)), severe physical abuse of a child under five (§ 300, subd. (e)), no provision for support (§ 300, subd. (g)), and abuse of a sibling (§ 300, subd. (j)). The petitions also alleged the whereabouts of the biological father, J.P., were unknown.

On June 4, 2015, the court held a contested jurisdiction and disposition hearing regarding the four children. Only mother testified during the hearing. The court found each allegation to be true and denied reunification services to mother under section 361.5, subdivision (b)(5), which provides the children were "brought within the jurisdiction of the court under subdivision (e) of Section 300 because of the conduct of that parent or guardian."

In this case, the juvenile court took judicial notice of the prior petitions and the minute orders of the June 4, 2015 hearing. There were no other transcripts or agency reports from the prior dependency included in the request for judicial notice and none were introduced as evidence.

3

The petitions and minute orders from the prior dependency do not directly or indirectly reference Antonio. The prior petitions do not include any language to suggest Antonio was involved in any way with the older four children or in causing the injuries to the two children. For example, there was no allegation mother resided with Antonio when these children were injured nor was there any allegation the children were injured by mother's significant other (Antonio). The petitions and the minute orders from the prior case were silent regarding Antonio's involvement with these four children.

B. *Removal of A.M.*

A.M. was born in December 2015. The following day, San Bernardino County Children and Family Services (the Department) received a referral that A.M. was born to mother and Antonio. On December 23, 2015, a social worker attempted to interview the parents at the family home but Antonio denied entrance to the home and refused to allow the social worker to speak directly with mother. The Department obtained a protective custody warrant, and removed A.M. from her parents' home.

The detention hearing occurred on December 29, 2015, at which time both mother and Antonio waived reading of the petition and entered denials to the allegations. The court indicated it had read and considered the detention report and ordered A.M. removed from both parents and placed in foster care. The detention report states mother had children who were previously removed from her care for child abuse. R.L. had suffered a "[f]racture to her collarbone, bruising to her forehead, bruising to the bridge of her nose and bruising along her right jaw line while in the mother's care." J.P. suffered a "fracture

4

[in] his right arm, as well as, a healing fracture in his left arm as well as having unexplained, 'old' bruise under his right eye, redness and bruising across his forehead, and redness on his knee." The results of a May 2015 forensic exam confirmed the injuries were "most likely due to physical abuse and neglect."

As to Antonio, the detention report states he "was present in the home with the mother and had babysat the children at the time of [their] injuries." The detention report indicated Antonio had no referral history with the Department and his criminal history consisted of three vehicle code infractions.

The court found a prima facie case for detention out of the home and scheduled a jurisdiction and disposition hearing.

C. *The Jurisdiction and Disposition Hearing*

On December 28, 2015, the Department filed a petition with the juvenile court in which it alleged A.M. came within the provisions of section 300, subdivisions (b) and (j). The petition alleged A.M.'s half siblings had previously been adjudicated dependents as a result of being "physically abused and neglected . . . by the mother." In the previous dependency, the juvenile court had denied reunification services to mother, and the half siblings were ultimately adopted. Regarding Antonio, the petition alleged he had been "residing with the mother" when J.P. and R.L. had sustained their injuries and thus A.M. was "at risk of the similar abuse."

The court held the jurisdiction and disposition hearing on February 5, 2016. Neither mother nor Antonio testified. The evidence consisted of the

5

jurisdiction/disposition report dated January 19, 2016, and the above-referenced request for judicial notice. The Department recommended the juvenile court remove A.M. from her parents' custody, offer family reunification services to Antonio, and bypass reunification services for mother.

The evidence against Antonio consisted of his interview as reported in the jurisdiction/disposition report. A Department social worker interviewed mother and Antonio on December 29, and Antonio only on December 30, 2015. Mother reported during her interview that Antonio had been "supportive and helpful." Antonio had helped watch her children when the maternal grandmother had injured her back. According to the social worker, Antonio "presented as concerned for his daughter," and "cooperative." He told the social worker that he had been in a relationship with mother since early 2014, but did not begin living with her until February 2015. He was living with mother when J.P. and R.L. sustained the injuries that resulted in the prior dependency. Antonio said he was shocked by the allegations of intentional physical abuse. He believed the injuries were accidental and did not believe mother abused the children. He stated, "[J.P.] didn't show any symptoms. He was throwing rocks with no complaints, that is why he didn't go for 3 days to the hospital." Antonio wanted A.M. to be placed with him and was willing to have mother move out "if that is what it takes."

The report also included a statement mother made during the prior dependency. She reported J.P. had fallen while at the maternal grandmother's home "3 weeks prior" but "did not believe [J.P.] fractured his arm there." Mother had told the Department that

6

Antonio "had been babysitting the children since they were last at [maternal grandmother's] home."

Despite this general evidence that both Antonio and the maternal grandmother were babysitting J.P. and R.L. around the time of the injuries, the jurisdiction/disposition report does not contain any evidence about when the children were injured and which adult had been caring for them when they were injured.

The jurisdiction/disposition report contained J.P. and R.L.'s forensic examination records. These records detail the injuries, but again provide no assistance in placing a general or specific timeline for when they were sustained.

After considering this evidence, the juvenile court found all of the petition's allegations true and proceeded to disposition. Counsel for A.M. argued Antonio should be denied reunification services because the children's injuries were severe and, as the caregiver at the time they were sustained, he would have noticed them. In other words, the same evidence that supported the court's jurisdictional findings also supported bypassing services under section 361.5, subdivision (b)(6). A.M.'s counsel argued the case of *Anthony J. v. Superior Court* (2005) 132 Cal.App.4th 419 supported the bypass request.

After considering argument and the case law A.M.'s counsel had submitted, the juvenile court ruled section 361.5, subdivision (b)(6) did not apply and ordered family reunification services to Antonio.

7

## II

## DISCUSSION

A.M. contends the juvenile court erred in finding the bypass provision in section 361.5, subdivision (b)(6) did not apply to Antonio. While we agree with A.M. that Antonio is a "parent" covered by the text of section 361.5, subdivision (b)(6), we disagree that Antonio meets the requirements for bypass.

A first priority in the juvenile dependency setting is to provide opportunity to maintain family unity by ordering reunification services, which are targeted to address the issues which brought the family before the court. "There is a presumption in dependency cases that parents will receive reunification services. [Citation.] Section 361.5, subdivision (a) directs the juvenile court to order services whenever a child is removed from the custody of his or her parent *unless* the case is within the enumerated exceptions in section 361.5, subdivision (b)." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 95.)

"Within the statutory framework of the California dependency scheme, section 361.5 generally governs the provision of family reunification services to the child's parents. It also specifically describes the circumstances in which the court may (and in some circumstances, must) bypass those services. (§ 361.5 subds. (b), (e)(1).) The section details who is *entitled to receive* mandatory reunification services, who *may receive* reunification services, the circumstances under which the court *may deny* reunification services to someone otherwise entitled to receive them, and those

8

circumstance[s] under which the court *must deny* reunification services." (*In re Adrianna P.* (2008) 166 Cal.App.4th 44, 56.)

Section 361.5, subdivision (b)(6), the bypass provision at issue here, authorizes denial of reunification services if the court finds by clear and convincing evidence "[t]hat the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of . . . the infliction of severe physical harm to . . . a half sibling by a parent." Section 361.5, subdivision (b)(6) defines "infliction of severe physical harm" to include, "deliberate and serious injury inflicted to or on . . . the body of a . . . half sibling of the child *by an act or omission of the parent or guardian*." (Italics added.) As the court held in *Tyrone W. v. Superior Court* (2007) 151 Cal.App.4th 839 (*Tyrone W.*), in order to bypass services under section 361.5, subdivision (b)(6), the court must find clear and convincing evidence the parent was "complicit in the infliction of physical harm by act, omission or consent." (*Tyrone W.*, *supra*, at p. 851.) A parent who is negligent, meaning the parent " 'reasonably should have known' of the abuse," does not fall within section 361.5, subdivision (b)(6) because "omission and consent both require *actual knowledge*, if not of the physical harm itself, then of another's abusive acts." (*Tyrone W.*, at p. 851, italics added.) We review a juvenile court's dispositional order for substantial evidence. (*In re K.B.* (2015) 239 Cal.App.4th 972.)

Here, the evidence A.M. cites as support for applying section 361.5, subdivision (b)(6) is, at worst, evidence that Antonio was a negligent caregiver. A.M. argues Antonio: (1) lived with mother during the time of J.P. and R.L.'s injuries, and (2)

9

babysat J.P. and R.L. when mother was at work and the maternal grandmother was not able to watch the children. In short, A.M. argues Antonio "was in the scene" when the children were injured. This evidence falls short of establishing that Antonio himself abused the children or that he had actual knowledge they were being abused and consented to the abuse or stood by and let it happen. Instead, this evidence shows Antonio s*hould have known* the children's injuries were nonaccidental, however, as the court held in *Tyrone W.*, negligent caregiving is insufficient to warrant bypass under section 361.5, subdivision (b)(6). (*Tyrone W.*, *supra*, 151 Cal.App.4th at p. 851.)

A.M.'s analogy to *Anthony J. v. Superior Court*, *supra*, 132 Cal.App.4th 419 is unpersuasive. In that case, the court bypassed services to the parent, Anthony, based on Anthony's admission that he had physically abused his girlfriend's children. (*Id.* at p. 425.) A.M. compares Antonio to Anthony by arguing "Antonio was present in the family home when R.L. and J.P. suffered broken bones," but proximity to an injured child is a far cry from admitting to intentionally abusing a child. There is simply no evidence in this case that Antonio physically abused J.P. or R.L.

We note the evidence the Department submitted for the jurisdictional portion of the hearing was the same evidence it submitted for purposes of disposition. While that is not atypical in these hearings, it is not automatic that the evidence which supported the jurisdictional findings can be construed to show infliction of severe physical harm by clear and convincing evidence, as required for denial of services under section 361.5, subdivision (b)(6). As the court explained in *K.F. v. The Superior Court of San Diego*

10

*County* (2014) 224 Cal.App.4th 1369, "[T]he infliction-of-harm language used in the reunification bypass provision is *much more narrowly tailored* than the broad failure-to-protect language [required to find dependency jurisdiction]. . . . [¶] Because failure to protect may not always constitute infliction of harm to trigger the reunification bypass statute, it follows that a failure-to-protect finding based on clear and convincing evidence does not *automatically* translate into an infliction-of-harm finding by clear and convincing evidence." (*Id.* at p. 1386.)

Our review of the record reveals sufficient evidence to support the jurisdictional finding that Antonio placed A.M. at a substantial risk of serious physical harm as a result of his inability to "adequately supervise or protect" A.M. due to his previous inability to protect J.P. and R.L. from sustaining serious physical injuries. (§ 300, subd. (b).) However, the record does not support a finding that Antonio himself caused the injuries to J.P. and R.L., that the injuries occurred while the children were in his care, or that he omitted to take steps to protect the children from abuse at the hands of another. As the juvenile court observed, because Antonio was "in the scene," he reasonably should have suspected the injuries were not accidental in nature. Such a conclusion supports the jurisdictional findings of the court, but does not support the bypass of services to Antonio. "[W]e believe the statutory language in section 361.5, subdivision (b)(6) is clearly stated, and does not authorize the court to deny reunification services to a negligent parent, that is, a parent who did not know the child was being physically abused

or injured (although the parent *should have reasonably known of the abuse or injury*)." (*Tyrone W.*, *supra*, 151 Cal.App.4th at p. 848, italics added.)

As A.M. argues in her brief, "[t]he purpose of section 361.5(b)(6) is to allow for the bypass of family reunification services to a child's parent/guardian when that custodian is so compellingly unfit as to render the provision of services futile." The evidence in this case does not lead us to reach that conclusion. There is insufficient evidence to suggest any failure on Antonio's part was anything more than negligent, and the evidence therefore does not rise to the level of an "omission" that would support the bypass provision requested by A.M.

### III

### DISPOSITION

We affirm the order of the trial court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.