Filed 10/17/22 Steven R. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STEVEN R., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF TULARE COUNTY, <br><br> Respondent; <br><br> TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Real Party in Interest. | F084704 <br><br> (Super. Ct. No. JJV073438C) <br><br><br> **OPINION** |

-ooOoo-

## THE COURT*

ORIGINAL PROCEEDINGS; petition for extraordinary writ. John P. Bianco, Judge.

Jordan Brown for Petitioner.

No appearance for Respondent.

Jennifer M. Flores, County Counsel, and Jason Chu, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

\* Before Levy, Acting P. J., Detjen, J. and Snauffer, J.

Steven R. (father) seeks an extraordinary writ from the juvenile court's July 27, 2022, dispositional orders denying him reunification services under Welfare and Institutions Code section 361.5, subdivision (b)(6)[1] (severe physical harm to a sibling) as to his now five-month-old daughter, J.R., and setting a section 366.26 hearing for November 21, 2022. Father contends there was insufficient evidence he physically abused J.R.'s siblings to support a jurisdictional finding under section 300, subdivision (a) that J.R. was at risk of serious physical harm. He further contends the court did not apply the clear and convincing standard of proof in denying him reunification services. We deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

These dependency proceedings were initiated on April 18, 2022, when the Tulare County Health and Human Services Agency (agency) received a referral regarding newborn J.R. There was concern J.R. was at risk of harm in the care of her mother, K.S. (mother),[2] because mother had an open family reunification case involving her then seven-year-old son, S.P., and five-year-old son, D.P. (the siblings), stemming from mother's physical abuse of the siblings, substance abuse, domestic violence with father (the siblings' paternal great uncle), and failure to provide adequate food, clothing, shelter and medical care.

*The Siblings' Case*[3]

The siblings came to the attention of the agency in March 2021 when then six-year-old S.P. had not attended school. After mother agreed for him to attend school

---

[1]    Statutory references are to the Welfare and Institutions Code unless otherwise noted.

[2]    Mother also filed an extraordinary writ in our case No. F084752.

[3]    The juvenile court record in the siblings' case was filed in writ proceedings in this court in our case No. F084368. On our own motion, we take judicial notice of the juvenile court record in case No. F084368. (Evid. Code, § 459.)

2.

via video conference, he was observed to have a black left eye, swollen shut and purple in color. Another incident was captured on video conference where the siblings were attempting to stab each other with adult size scissors and mother was heard arguing with her boyfriend.

An agency social worker and law enforcement responded to the family home. The siblings were dirty as if they had not been bathed. The home was also dirty. Mother was under the influence of methamphetamine and arrested, leaving the siblings without a care provider. The siblings' father, Steven P., was incarcerated in Wisconsin. The social worker took the siblings into protective custody and placed them in foster care.

The foster mother reported the siblings had a lot of marks and bruising on their backs, buttocks and legs. She sent the social worker pictures of D.P. with scratches on his hand and face near his eye. She was unable to take any more pictures because he would not allow it. S.P. had a huge bruise/scrape-like mark covering at least half of his buttock, a bruise/scrape-like mark on his arm, a dark red and faded black colored bruise about an inch in size on his upper wrist, and what looked like a cigarette burn on his back with exposed flesh with some scars from what looked like older wounds. Mother denied physically abusing the siblings and claimed they received the marks from falling down.

The siblings stated they were afraid of " 'uncle,' " referring to father. They frequently told the foster mother that " 'Uncle [was] going to whoop them.' " D.P. stated his mother and uncle "whooped" him. They disclosed mother kicked and slapped them and S.P. stated mother used a belt.

Mother said father was an authority figure but that she would never allow him to hit her children. If the siblings did not listen to him, he put them in timeout. Father lived with mother until April 26, 2021, when she forced him to leave her home. She was a victim of domestic violence on April 24, 26 and 29, 2021. She would not say whether she planned to maintain a relationship with him.

3.

Father admitted to " 'whooping' " the siblings when they misbehaved. He described " 'whoopings' " as hitting them " 'a couple times on the butt.' " He denied leaving any marks or bruises. He said mother gave him permission to discipline the siblings.

The agency filed a dependency petition alleging under section 300, subdivision (a) (serious physical harm) that mother physically abused the siblings and under subdivision (b) (failure to protect) that she failed to provide them adequate housing and food, endangered them by abusing substances, and exposed them to domestic violence with father.[4] As to the subdivision (a) count, the department described the siblings as having "numerous current and fading marks and bruises on their backs, buttocks and legs. [D.P.] had scratches on his hand [and] face near his eye. [S.P.] had a large bruise/scrape on his buttocks, on his arm, upper wrist, and knee."

Pictures of the family home and of the siblings' injuries were provided to the juvenile court.

The juvenile court found the allegations true, ordered the siblings removed from mother's custody and ordered her to complete a parenting program, mental health and substance abuse assessments and any recommended treatment, a domestic violence victim's services program and participate in random drug testing.

By the 12-month review hearing in May 2022, mother had completed her service plan requirements and given birth to J.R. However, she engaged in domestic violence with father. On April 22, 2022, police responded to a call of spousal abuse at the parents' residence. Mother had bruising on her neck and claimed father choked her. He was angry because she wanted to go home and feed then four-day-old J.R. after finishing their

---

[4]     The juvenile court also sustained allegations under section 300, subdivision (b) that Steven P.'s use of methamphetamine and heroin rendered him incapable of providing regular care for the children and under section 300, subdivision (j) (no provision for support) that he could not arrange for their care because he was incarcerated.

4.

breakfast at a restaurant. Father was not ready to go home and objected to the manner in which she spoke to him. He hit her, punched her in the back of the head and began choking her. He threatened to kill her if she took J.R. away from him. He also grabbed a hammer during the altercation, raised it above his head and threatened to hit her with it. Father claimed mother tried to grab him while he was holding J.R. He did not want to continue their relationship and she was using J.R. to be with him. He had to restrain her and put his hands on her chest to hold her down. She kept going at him and he was attempting to stop her. Father was arrested.

Meanwhile, the siblings continued to make statements about physical abuse and other things they witnessed in the family home. After visitation, the siblings were dysregulated and displayed problematic behaviors.

At a contested 12-month review hearing on May 11, 2022, S.P.'s therapist testified S.P. disclosed being hit by mother and father. He was afraid of them. The therapist diagnosed S.P. with posttraumatic stress disorder and testified the physical abuse affected S.P.'s emotional regulation and impulse control. S.P. had also tried to harm himself. D.P.'s therapist invoked the patient-therapist privilege when asked if D.P. disclosed being physically abused.

The juvenile court terminated reunification services and set a section 366.26 hearing for August 31, 2022.[5]

*J.R.'s Removal*

On April 25, 2022, a social worker made a home visit, noting it was clean and appropriate and mother had supplies for J.R. Mother did not leave J.R. with father unsupervised and said she thought he would be different with her since J.R. was his child.

---

[5] Mother filed a notice of intent to file a writ petition, which was assigned our case No. F084368. However, she did not file a writ petition and the case was dismissed.

She denied the siblings were physically abused but acknowledged that she needed to take accountability.

The following day, the social worker took J.R. into protective custody. The agency filed a dependency petition on J.R.'s behalf, alleging one count under section 300, subdivision (a) (serious physical harm) (count a-1) that father's physical abuse of the siblings placed J.R. at a substantial risk of also suffering serious physical harm. Specifically, the petition alleged that on or near March 31, 2021, the siblings were physically injured while in father's care. They "had numerous current and fading marks and bruises on their backs, buttocks, and legs. [D.P.] had scratches on his hand and face near his eye. [S.P.] had a large bruise/scrape on his buttocks, on his arm, upper wrist, and knee." The petition additionally alleged two counts under section 300, subdivision (b)(1) (failure to protect) (count b-1 as to mother and count b-2 as to father) that the parents exposed J.R. to domestic violence in that on or about April 25, 2022, father choked mother causing a popped blood vessel in her eye and was arrested, and one count under section 300, subdivision (j) (abuse of sibling) as to mother (count j-1) in that the juvenile court found on June 9, 2021, that mother physically abused, and failed to protect S.P. and D.P. from physical abuse and her substance abuse, thus placing J.R at a similar risk of abuse. The petition further alleged that mother's visitation with the siblings was suspended on April 13, 2022. J.R. was placed in a foster home.

*The Detention Hearing*

In its detention report, the agency detailed the specifics of the physical abuse the siblings suffered while in father's care and their fear of him. On April 14, 2021, S.P. disclosed during an interview that his " 'uncle' " was going to hurt him and mother. He said, " 'Uncle hit mommy and mommy crying.' " He saw " 'mommy hit uncle in teeth and punched him and his teeth fell out.' " He did not disclose who caused the injuries. However, during the course of the case it was discovered the children called father, mother's boyfriend, " 'uncle.' "

6.

The siblings were also extremely afraid of mother. They had significant outbursts after visits and continued to make statements of physical abuse and other things they witnessed in the family home. They also made statements about killing their mother and falsifying their abuse in order to avoid contact with her. Mother denied father physically abused the siblings.

On April 28, 2022, the juvenile court appointed counsel for the parents and received the detention report into evidence without objection. The court ordered J.R. detained and ordered the agency to provide mother a mental health assessment, alcohol and drug testing and supervised visits and father substance abuse, mental health and domestic violence assessments, alcohol and drug testing, parenting and supervised visits. A jurisdiction/disposition hearing (combined hearing) was set for June 6, 2022.

*The Jurisdictional Hearing*

On May 3, 2022, father informed the social worker there were no charges filed against him as a result of his arrest. Two weeks later, he said he did not know if he would be charged and did not want to discuss it or get anyone in trouble. He said he spanked the siblings but not very hard. He did not even know about the physical abuse allegations prior to the detention hearing.

On May 11, 2022, the juvenile court terminated mother's reunification services as to the siblings. On May 25, 2022, mother obtained a five-year restraining order against father.

In its report for the combined hearing filed on June 3, 2022, as evidence supporting jurisdiction, the agency reiterated the details previously provided in the detention report regarding the physical injuries sustained by the siblings and their disclosures that father inflicted them. Of particular relevance here, the agency in summarizing its initial contact with the children on March 31, 2021, stated "[S.P.] was observed with a left black eye; however, it was unknown how the child sustained the injury. … The social worker attempted to engage with the children; however, the

7.

children were not verbal at the time of the investigation. [Social worker] Carrasco was unable to understand [S.P.'s] language as he had a speech impediment. [S.P.] was not able to communicate how he had received the black eye." On April 14, 2021, S.P. disclosed " 'Uncle hit mommy and mommy crying.' The child stated 'mommy hit uncle in teeth and punched him and his teeth fell out.' [S.P.] stated he saw it happen. The child did not disclose who caused the injuries."

The agency also updated the court on the parents' progress in their court-ordered services. Mother was participating in mental health counseling and a child abuse intervention program. She tested positive for opiates on April 29, 2022, and submitted to a hair follicle test, which revealed levels of cocaine and hydrocodone. However, because the levels were below the cut off, the testing facility could not determine whether she used the drugs and when. From a testing and legal standpoint, the facility considered them negative results. Father was scheduled for a mental health assessment and completed an application and scheduled an intake for the child abuse intervention program. He completed a substance abuse assessment and it was determined he did not require treatment. However, the following day he tested positive for opiates. He enrolled in family intervention alcohol and other drugs aftercare and agreed to attend the aftercare group sessions monthly and meet with a specialist for an individual session once a month. He was participating in domestic violence services and completed six of the 18 required sessions. He enrolled in a parenting class but was dropped due to excessive no shows.

The agency recommended the juvenile court sustain the allegations and deny father reunification services under section 361.5, subdivision (b)(6) based on the severe physical abuse he inflicted on the siblings. It recommended the court deny mother reunification services under section 361.5, subdivision (b)(10) because her reunification services were terminated in the siblings' case and she failed to subsequently make reasonable efforts to eliminate the domestic violence that necessitated their removal.

8.

On June 6, 2022, the juvenile court set the matter for a combined contested hearing on July 6, 2022. The day before the hearing, the agency filed an addendum report, incorporating character references for father.

On July 6, 2022, father submitted on count b-2 alleging he placed J.R. at a substantial risk of suffering serious physical harm by engaging in domestic violence with mother on April 25, 2022. The juvenile court found father made a knowing and intelligent waiver as to count b-2. No additional evidence was presented regarding the remaining counts and the attorneys proceeded by argument only. During his argument, county counsel asked the court to take judicial notice of the file in the siblings' case. Father's attorney objected, arguing that father was not a party in the siblings' case and not allowed to contest the allegations. Instead of taking judicial notice of the siblings' case file, the court resolved the issue by stating it would consider the information in the social worker's report as to allegations father engaged in domestic violence with mother and physically abused the siblings, noting that father was living with mother when the agency first became involved. As to mother, the court stated it would consider the complete case file, including the reports and prior allegations.

Father's attorney argued there was insufficient evidence to support count a-1 because in the brief summary provided in the agency's report, "[S.P.] did not disclose who caused the injuries." In addition, S.P. was describing domestic violence between mother and father, not physical abuse.

The juvenile court sustained the allegations and set a contested dispositional hearing for July 27, 2022.

*The Dispositional Hearing*

The agency filed an addendum report on July 22, 2022, advising the juvenile court the parents were participating in their court-ordered services but reiterated its recommendation the court deny them reunification services.

9.

Counsel presented their positions at the contested dispositional hearing by argument only. The court admitted into evidence an email mother sent to the social workers detailing the skills she had learned over the prior year that she claimed made her a better parent. She recently obtained a restraining order and developed a safety plan. County counsel argued mother had not taken responsibility for the domestic violence between her and father and the siblings' physical abuse. Mother's attorney pointed out that mother was no longer associated with father. She contacted the police and sought a restraining order. She was also participating in her services. Minor's counsel advised the court he was concerned about mother's relationship with father but stated her mental health therapist reported she attended her therapy sessions and was making progress. Her drug tests were negative and she completed 16 of the child abuse intervention sessions and made good progress since May 2022. Counsel argued providing her reunification services would serve J.R.'s best interest.

As to father, county counsel argued father's conduct toward the siblings fell within the provisions of section 361.5, subdivision (b)(6) and father had not taken any accountability for it. Given the severity of the abuse the siblings suffered and the emotional damage it caused them, counsel argued for denial of services. Minor's counsel agreed with county counsel. Father's attorney argued the agency failed to meet its burden under section 361.5, subdivision (b)(6) because the siblings did not identify who harmed them and father denied the allegations. He asked the court to provide father reunification services.

The juvenile court clarified that it could consider the siblings' case file in determining the severity of the physical abuse they sustained and in determining whether it would benefit J.R. for father to receive reunification services. The court ordered J.R. removed from parental custody, denied the parents reunification services as recommended and set a section 366.26 hearing.

**DISCUSSION**

*A.* *Substantial Evidence Supports the Jurisdictional Finding Under Section 300, Subdivision (a)*

Father contends there was insufficient evidence to support the jurisdictional finding under section 300, subdivision (a) that he physically abused the siblings because S.P. did not identify his abuser, there was no evidence he lived with mother when the abuse occurred and no evidence of the actual injuries was presented to the juvenile court. We disagree.

The juvenile court may adjudge a child to be a dependent of the court under section 300, subdivision (a) if:

> "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. For purposes of this subdivision, a court may find there is a substantial risk of serious future injury based on the manner in which a less serious injury was inflicted, a history of repeated inflictions of injuries on the child or the child's siblings, or a combination of these and other actions by the parent or guardian that indicate the child is at risk of serious physical harm. For purposes of this subdivision, 'serious physical harm' does not include reasonable and age-appropriate spanking to the buttocks if there is no evidence of serious physical injury."

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re K.S.* (2016) 244 Cal.App.4th 327, 337.)

Father contends the agency's case against him is contained in brief summaries of the siblings' case contained in the agency's reports concerning J.R. Those summaries, he argues, are insufficient to establish that he physically abused the siblings. Specifically, father directs us to specific portions of the jurisdiction/disposition report describing the agency's initial contacts with the family in March and April 2021 and the agency's statement that S.P. did not say who caused his injuries. However, further along in that same report S.P. expressed fear that his " 'uncle,' " an undisputed reference to father, was

going to hurt him and expressed extreme fear of him. In addition, the siblings stated that father hit them and he admitted disciplining them by hitting them.

As for evidence of the siblings' injuries, the nature and extent of the physical abuse father and mother inflicted is described in detail throughout the record and was never disputed. They had extensive bruising on their bodies in various stages of healing and S.P. had what appeared to be a cigarette burn on his back. Further, there were photographs of the siblings' injuries in their case file, which was available to the court, and evidence mother and father physically abused the siblings in like manner and degree.

Finally, while not in J.R.'s record, there was evidence in the siblings' record that mother and father were living together in March 2021 when the agency investigated S.P.'s injuries. According to mother at that time, father lived with her until April 26, 2021, when she forced him to move out.

We conclude substantial evidence supports the juvenile court's finding there was a substantial risk that J.R. would suffer serious physical harm inflicted nonaccidentally by father as described in section 300, subdivision (a) in light of his repeated infliction of injury on the siblings.

B.    *Substantial Evidence Supports the Juvenile Court's Denial of Reunification Services Under Section 361.5, Subdivision (b)(6)*

Father contends the juvenile court erred in denying him reunification services under section 361.5, subdivision (b)(6) because he was not the siblings' parent or a party in their dependency case. He further argues the court violated his right to due process by considering the siblings' juvenile case file and failed to apply the clear and convincing standard of proof required by the statute. We find no error.

Section 361.5, subdivision (b) sets forth certain circumstances—also called reunification bypass provisions—under which the juvenile court may deny a parent reunification services if clear and convincing evidence supports it. (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.)

Here, the juvenile court applied section 361.5, subdivision (b)(6) which allows the court to bypass reunification services for a parent where it finds by clear and convincing evidence that the child was adjudicated a dependent pursuant to any subdivision of section 300 as a result of severe physical harm to the child or a sibling of the child caused by a parent and the court makes a factual finding that it would not benefit the child to pursue reunification services with the parent. "[S]evere physical harm" under the statute, as relevant here, may be based on, but is not limited to, "deliberate and serious injury inflicted to or on a child's body or the body of a sibling … by an act or omission of the parent or guardian, or of another individual … with the consent of the parent …." (§ 361.5, subd. (b)(6)(C).)

In determining whether reunification services would benefit a child, the juvenile court must consider a list of factors enumerated in subdivision (i) of section 361.5: (1) the specific act or omission comprising the severe physical harm inflicted on the child, the child's sibling or half sibling; (2) the circumstances under which the abuse or harm was inflicted on the child, the child's sibling or half sibling; (3) the severity of the emotional trauma suffered by the child, the child's sibling or half sibling; (4) any history of abuse of other children by the offending parent; (5) the likelihood that the child may be safely returned to the care of the offending parent within 12 months with no continued supervision; and (6) whether or not the child desires to be reunified with the offending parent.

We review an order denying reunification services under subdivision (b) of section 361.5 for substantial evidence, bearing in mind the juvenile court was required to apply the heightened clear and convincing evidence standard of proof. (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 96; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995–996.)

As a preliminary matter, we dispense with father's contention section 361.5, subdivision (b)(6) could not apply to him because he was not the siblings' father in the

prior dependency case. The court in *Anthony J. v. Superior Court* (2005) 132 Cal.App.4th 419 addressed this issue and held that the section 361.5, subdivision (b) bypass provision involving a parent having previously inflicted severe physical harm on the child's half siblings (§ 361.5, subd. (b)(6)) applied to the child's father in the child's current dependency proceeding even though the child's father was not the father of the half siblings he physically abused. (*Anthony J.*, at pp. 421–423.)

We can also dispense with father's assertion the court's application of section 361.5, subdivision (b)(6) violated his right to due process because he was a nonparty to the dependency case involving the siblings and unable to defend himself. First, the allegation of severe physical harm in the siblings' case was as to mother only even though evidence was subsequently developed that also pointed to father. In addition, father was represented by counsel at each of the hearings in the instant matter yet declined to challenge any of the evidence relating to the abuse. Under these circumstances, we conclude there was no violation of father's procedural due process rights.

As to father's contention the juvenile court did not apply the clear and convincing standard, the court did initially state that because it had already found the underlying facts of the physical abuse to be true by a preponderance of the evidence, it only had to find by clear and convincing evidence that services would not benefit J.R. Specifically, the court stated,

> "I have to find by clear and convincing evidence that if services would not be provided there would be no benefit to providing services, not that the allegation now is by clear and convincing evidence do I have to make a finding that the abuse occurred. I already made that finding at the [jurisdictional hearing]. That's only a preponderance of the evidence. The issue is whether or not services will be provided and whether or not by clear and convincing evidence I will find that there is no benefit based on the allegations of abuse.

14.

However, after further discussion with counsel, the juvenile court found by clear and convincing evidence father was described by subdivision (b)(6) of section 361.5, stating,

> "As to [father], the [c]ourt does also find that by clear and convincing [evidence] that [father] is the person described under [section] 361.5[, subdivision] (b)(6) in that he perpetrated abuse on the stepchildren [S.P. and D.P.], the abuse as detailed in the jurisdiction disposition report regarding the nature of the abuse, physical abuse leaving marks on the children was substantial. … The [c]ourt does find by clear and convincing evidence that [J.R.][6] will not benefit from reunification services with either mother or father …."

Further, substantial evidence supports the juvenile court's application of section 361.5, subdivision (b)(6) to father. As discussed above, father inflicted deliberate and serious injury on the siblings with mother's consent. In addition, the evidence did not support a finding that providing father reunification services would benefit J.R. Most of the factors listed in section 361.5, subdivision (i) weigh in favor of denying father reunification services. He has a history of physically abusing the siblings by hitting them. Although he claimed he did not leave bruises, they had significant bruising. In addition, they were vulnerable. Not only were they little children but they were nonverbal and unable to complain or defend themselves. Further, they suffered emotional trauma, which manifested in S.P.'s desire to harm himself, and behavioral problems, impulsivity and dysregulation. As for whether J.R. desired to reunify with father, she was too young to express her desire. Finally, there was little likelihood she

---

**6** The juvenile court actually stated, "The [c]ourt does find by clear and convincing evidence that children will not benefit from reunification services with either mother or father …." It is unclear whether the court was referring to the siblings as "children" or was perhaps reading from prepared language that included "children." In any event, "the benefit from reunification services" provision in the statute refers to "the child" over whom the court has taken jurisdiction, in this case J.R. We construe the court's reference to "children" in this case as an inadvertent misstatement and its intention was to refer to J.R.

could be safely returned to father's custody within 12 months without continuing supervision in light of his denial that he physically abused the siblings.

We find no error on this record and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to California Rules of Court, rule 8.490(b)(2)(A).